THE BLACKSTONE HALL CO. *vs.* RHODE ISLAND HOSPITAL TRUST CO., Trustee, *et als.*

MAY 11, 1916.

PRESENT: ·Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Contracts.  Construction.  "Prove."*

After an agreement had been made for the sale of two tracts of land, claims to the ownership of the second tract were made by third parties, and in consequence of such claims vendor modified the agreement and it was provided that the notes to be given by vendee should be held until such time as vendor should either prove that clear title passed by her deed or should make the title clear by further conveyance within one year or at the end of the year it should be determined by arbitration how much should be deducted from the price by reason of outstanding interests, which sum was then to be credited on the notes.

Without performing these conditions the vendor brought an action against vendee in assumpsit for refusal of vendee to have the notes delivered and to

pay them, and vendee brought its bill in equity to have the prosecution of plaintiff's action enjoined and to have the rights of the adverse claimants determined and the amount payable to vendor ascertained.

*Held,* that the intention of the parties, while not specifying the method of accomplishing it, was that there should be a real and conclusive determination of the validity or invalidity of the outstanding claims before the delivery of the notes and payment of the withheld purchase price. But the validity or invalidity of such claims could only be established and made certain by some proceeding in court to which the adverse claimants were parties for they would not be concluded by the result of the trial of an action by vendor against vendee for refusal of vendee to have the notes delivered to vendor and to pay the same.

*Held, further,* that the bill made a *prima facie* case stating substantial grounds for relief by injunction against the prosecution of the action at law pending a conclusive determination of the title to the property.

*(2)  Preliminary Injunction.*

As a preliminary injunction is not a formal determination of the rights of the parties and as its office is to hold matters in *statu quo* it will not as a rule be interfered with unless it be reasonably clear that it has been exercised in an illegal manner. To authorize its issuance however the complainant must at least make out a *prima facie* case.

*(3  Equity.  Adequate Remedy at Law.*

The adequate remedy at law which will deprive a court of equity of jurisdiction is a remedy as certain, complete, prompt and efficient to attain the ends of justice as the remedy in equity.

*(4)  Vendor's Lien.*

Where promissory notes, endorsed in accordance with an agreement for the sale of land, were retained by vendee after execution in accordance with the agreement, until vendor should be able to make a clear title to the land; until such time as vendor became entitled to delivery of the notes, she did not waive her vendor's lien for such portion of the purchase money as might be found to be due.

*(5)  Cloud on Title.  Equity.*

In an action by a vendee to remove a cloud on title he may join a partially unpaid vendor as a party.

*(6)  Cloud on Title.  Equity.  Attachments.*

An attachment of real estate creates a lien thereon and constitutes a cloud on the title, and upon both grounds a partially unpaid vendor who has attached the property for the unpaid portion of the purchase price is a proper party to a bill by the vendee to remove a cloud on the title.

*(7)  Cloud on Title.  Equity.*

While a bill to remove a cloud must show some title in the complainant to the land in controversy, this may be done by the averment of the ultimate

fact of title or by the averment of ownership or by stating facts which show title, and where a bill, although containing no express assertion of title in complainant, alleged that at the time of her conveyance to it the partially unpaid vendor who was made a party, "had at least an undivided half interest or share in said land and rights, if not the sole ownership thereof," and that she conveyed all her right, title and interest therein to the complainant, this constituted a sufficient averment of title.

BILL IN EQUITY.  Heard on appeal of a respondent from an interlocutory decree of injunction.  Appeal dismissed.

BAKER, J.  This case is before the court on the appeal of Nancy C. Budlong, one of the respondents, from an interlocutory decree entered by the Superior Court, temporarily enjoining her from further prosecuting her action at law against the complainant in the present suit, said action being Law No. 36776 in the records of the Superior Court for the counties of Providence and Bristol.

At the hearing on the prayer for a preliminary injunction the complainant relied upon the allegations of the bill verified by the affidavit of the president of the plaintiff corporation and the appellant offered no evidence, but claimed that the bill did not disclose any right to relief against her.

The important allegations of the bill are as follows: On June 13, 1913, the complainant, which is a corporation organized under the laws of Rhode Island, entered into a written contract with the defendant, Nancy C. Budlong, by which it agreed to buy and she agreed to sell and convey by a warranty deed to the complainant, for the sum of $15,000, two tracts of land in Providence in said state.  There is no controversy about the first tract.  The second tract is a triangular lot of land wholly or mostly covered by the waters of the Seekonk river, directly west of the first tract with the apex of the triangle in the southerly line of Pitman Street, about 197 feet from its junction with East River Street, bounded easterly about 192 feet on the first lot, southerly by the harbor line of Seekonk River about 194 feet and northwesterly about 273 feet by a line drawn from the

western end of said southern boundary to the apex of said triangle on Pitman Street with all riparian rights and rights of filling in and wharfing out appurtenant thereto.

The purchase money was to be paid in the following manner: $1,000 in cash upon delivery of the deed; four promissory notes for $1,000 each were to be given, signed by the complainant and endorsed by its president and treasurer, and payable in two, four, six and eight months, respectively, from the date of the delivery of said deed and a promissory note for $10,000 was also to be given similarly dated, signed and endorsed, secured by a first mortgage on the property covered by said agreement and payable to said Nancy C. Budlong or to any one she might procure to take such note and mortgage.

Thereafter the complainant learned that the whole of the second tract was claimed by other persons. The heirs and widow of one, William H. Walcott, deceased, claimed a strip just to the west of the first tract and running from Pitman street across the easternmost part of the second tract to the harbor line there measuring about 69 feet. John B. Lewis claimed a similar strip just west of the Walcott strip, running from Pitman street across the center of said second tract to the harbor line there measuring about 43 feet. The Rhode Island Hospital Trust Company, as trustee, claimed a third strip next west of the Lewis strip, extending from Pitman street to the harbor line and including the remainder of the second tract. These three claims were derived, respectively, from William H. Walcott, Nathaniel S. Mowry and Moses B. I. Goddard, as trustee, to whom the three strips of land were respectively set off by a decree of the Supreme Court of this state, entered March 8, 1879, in Providence County, in a suit in equity for partition.

Mrs. Budlong derived her title to both tracts by mesne conveyances from one William J. Harris. He was not made a party to said suit for partition, although at that time he claimed to be the owner of said second tract by virtue of a certain deed from Seth Padelford and others, the same per-

sons from whom by mesne conveyances Moses B. I. Goddard, as trustee, derived his interest in all the land partitioned as above mentioned.

In consequence of these conflicting claims based on a decree in equity and deeds, under the advice of its legal counsel the complainant refused to carry out its contract of purchase with Mrs. Budlong who, in order to induce it to accept from her a conveyance of the two tracts, procured quit-claim deeds from the widow and three of the four heirs of William H. Walcott of their respective rights in the strip claimed by them and then under date of August 20, 1913, entered into a new written contract with the complainant, modifying the original contract.

(1)  By this new contract it was provided, among other things, that Mrs. Budlong should convey the first described tract by warranty deed and should only convey her right, title and interest in and to the second tract, including therewith her right, title and interest to the entire Walcott strip, and that the four promissory notes for $1,000 each should not then be delivered to her but should be deposited with complainant's legal counsel to be held by them and not delivered to her until she should either prove that full and clear title to all of said described land passed by her deed to the complainant or should make its title to all said land full and clear by further conveyance or conveyances, for the accomplishment of which one year from August 20, 1913, was to be allowed her, or at the end of said year it should be determined by arbitration in the manner provided for in the second agreement, how much ought to be deducted from the purchase price by reason of outstanding interests in or claims to said land which sum was then to be credited on said notes.

In the second agreement there was the further provision that the fourth or last promissory note should be held by said legal counsel for two years as security and as a guaranty for the payment to the complainant by the tenant of the first tract of the rent due it by said tenant and for the per-

formance of all the lessee's covenants. The bill avers the nonpayment of said rent and that the amount thereof now due exceeds the amount, principal and interest, due on said fourth note.

The original contract as modified by the later agreement was on August 20, 1913, carried out by the delivery of a deed in form as required, duly executed by Mrs. Budlong, the acceptance of the same by the complainant, the payment by it of $1,000 cash, the delivery in accordance with the instructions of Mrs. Budlong to one John B. Carpenter of a promissory note for $10,000 secured by mortgage on the entire real estate conveyed and the depositing of the four promissory notes with complainant's legal counsel in escrow for future delivery in accordance with the provisions of the second agreement.

Afterwards, with the consent of Mrs. Budlong, the complainant procured from the fourth heir of William H. Walcott a quit claim deed of his interest in the Walcott strip and the money paid therefor, $220, was endorsed upon the first of said promissory notes as part payment thereof. After this had been done the appellant claimed that full. and clear title to both of the tracts had passed by her deed to the complainant and demanded the delivery to her of the four promissory notes and their payment. This the complainant refused to do because the validity and value of the outstanding interests had not been determined, but offered to submit to arbitration the question of what deduction ought to be made from the notes on account of these interests in accordance with the modified contract. Mrs. Budlong refused this offer and later, by writ dated July 9, 1915, brought an action at law in assumpsit against the complainant for its refusal to have said notes delivered to her and to pay the same. In that action she has attached all the property conveyed by her to the complainant.

The complainant avers on information and belief that Mrs. Budlong at the time of her said conveyance to it had at least an undivided half interest or share in the second tract and

in the rights appurtenant thereto, if not the sole ownership thereof, as claimed by her.

Said Rhode Island Hospital Trust Company, the devisees of said John D. Lewis, who died testate May, 1915, said John B. Carpenter and said Nancy C. Budlong are made parties respondent to the bill.

The bill further alleges that as a result of the foregoing statement of facts the claims of the respondents other than Mrs. Budlong and Mr. Carpenter constitute clouds upon the title of the complainant to the second tract of land which he is entitled to have removed, or if the Trust Company and the Lewis devisees have an undivided half interest in portions of said second tract that the complainant is entitled to partition of said portions, and that unless the prosecution of said action be enjoined and all matters in controversy between said parties be determined in this equity suit the complainant is in danger of being obliged to pay the balance now unpaid on said promissory notes without any deduction on account of said outstanding claims and yet of having the claims of said Lewis devisees and said Trust Company determined against him.

The relief prayed for is to have the prosecution of Mrs. Budlong's action at law temporarily and permanently enjoined and her attachment vacated, to have the rights and interests of said Lewis devisees and the said Hospital Trust Company, as trustee, if any, in said second tract determined and settled and the amount properly payable to Mrs. Budlong on said promissory notes ascertained and determined, which amount the complainant offers then to pay.

The appeal raises the question of whether the bill of complaint states a case for equitable relief against the appellant. (2) As a preliminary injunction is not a formal determination of the rights of the parties and as its office is to hold matters in *statu quo*, it will not, as a rule, be interfered with unless it be reasonably clear that it has been exercised in an illegal manner. *American Electrical Works* v. *Varley Co.*, 26 R. I. 440; *Armour* v. *Hall*, 38 R. I. 300. To authorize its

issuance, however, the complainant must at least make out a *prima facie* case, 22 Cyc. 754. The appellant says that this has not been done in the present case. Her contention is that the complainant has obligated itself by the modified contract to pay the balance of the purchase money entirely independent of an adjudication of the dispute as to the title of the property in question as between it and the adverse claimants thereto. To state it otherwise—her claim in effect is, that the complainant has by its contract bound itself to pay her the withheld purchase money and that it is no concern of hers if it should also be compelled to pay additional sums to the adverse claimants in order to perfect its title to the land in question.

In considering this claim a casual inspection of the modified contract makes it manifest that Mrs. Budlong is by it required to do one of two things before her right to the delivery and payment of the notes comes into being. First, she must prove, if she can, that a full and clear title to the property passed by her deed to the complainant. Failing to do this, then, as the next alternative, she must make the title full and clear by obtaining further conveyances. Failing in this and accepting as a fact that the title conveyed is imperfect, she agrees to join in an arbitration to ascertain the value of the outstanding claims and of what deduction from the purchase money should be made therefor. There is no claim or even suggestion that any of these things have been done. While it appears that Mrs. Budlong asserts that she conveyed a good title, her counsel in the argument before the court stated that he expects to prove this in the future trial of the action at law. In other words, her contention is that, inasmuch as the mode of proving the title to be full and clear is not specified in the contract, the question can be raised and determined as between Mrs. Budlong and the complainant in the action for the recovery of the purchase money, although such determination would admittedly not in fact make certain that the title of the complainant is full and clear. Is this the proper inter-

pretation of the word "prove" in the contract ?   Was this
the intention of the parties as expressed in the contract ?
Among the meanings given the word "prove" in the best
modern dictionaries are:   "To establish; to render or make
certain."   These may be said to be its usual and ordinary
meaning in legal matters and proceedings.   From a con-
sideration of the language and subject-matter of the con-
tracts, of the questions raised by the court records as
affecting the title, of the unquestioned fact that the parties
were seeking a determination of these questions before a full
execution of the contract, as evidenced by the provision as
to the non-delivery of part of the purchase money until the
soundness of the title of Mrs. Budlong should be determined
and, if ascertained to be defective, by the further provision
for curing the defect, and failing this by the provision for
ascertaining the deduction to be made from the purchase
price to be paid for a good title, it seems plain that the inten-
tion of the parties, while not specifying the method of accom-
plishing it, was that there should be a real and a conclusive
determination of the validity or invalidity of the outstanding
claims of the Lewis heirs and of the Rhode Island Hospital
Trust Co., as trustee, before the delivery of the notes and the
payment of the withheld purchase money.   We think this
is the correct interpretation of the clause that Mrs. Budlong
is to *prove* her title to be full and clear.   If she did it, the
notes would thereupon become deliverable and payable;
if she failed to prove it, then she had the opportunity to make
the title full and clear by further conveyances.   Doing this,
the notes would then become deliverable and payable.
Failing to do either, and the title being found or admitted to
be defective, the provision is that the notes are not deliver-
able and payable until the proper deduction of the out-
standing claims is ascertained and credited on the notes.
But the validity or invalidity of said outstanding claims
could only be established and rendered or made certain by
some proceeding in court to which the adverse claimants
were parties.   Of course they would not be concluded by

the result of the trial of the action of law of the appellant against the complainant.

We think it clear, therefore, that the fact that a full and clear title passed by appellant's deed cannot in the sense contemplated by the parties in their contract be proved in said action at law. It follows, therefore, from our interpretation of the contract that the complainant has not obligated itself to pay the balance of the purchase money independent of the determination of the validity of the adverse claims to the property in question; but, on the contrary, that the conclusive determination of the validity and value of such claims is a prerequisite to the payment of any of the withheld purchase price. In this view, to allow the appellant to prosecute her action at law pending the determination of the validity of these adverse claims would be inequitable. Even if the complainant should defeat the action, as for example on the ground that it had been prematurely brought, the parties would have made no real progress in the settlement of their controversies. It is apparent that the rights of Mrs. Budlong and of the complainant in the premises cannot be adequately dealt with in an action at law, but that they can be ascertained and determined adequately and complete relief be afforded by the suit in equity.

In *Williams* v. *Neely*, 134 Fed. Rep. 1, on page 10, the court says: "In *Davis* v. *Wakelee*, 156 U. S. 680, 688, we find these words: 'It is a settled principle of equity jurisprudence that, if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. . . . Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law.' The adequate remedy at law which will deprive a (3) court of equity of jurisdiction is a remedy as certain, complete, prompt and efficient to attain the ends of justice as the remedy in equity. *Boyce* v. *Grundy*, 3 Pet. 210, 215; *Springfield Milling Co.* v. *Barnard & Leas Mfg. Co.*, 81 Fed. 261, 265; *Brown* v. *Arnold*, 131 Fed. 723." In *Wilbor* v.

*Matteson,* 8 R. I., 166, 169, which was a case under the flowage act, the legal remedy was held to be adequate which distinguishes it from the case at bar.   In *Williams* v. *Neely, supra,* it was sought to enjoin the prosecution of an action at law upon a promissory note for the purchase price of land until there should be a reduction therein for partial failure of title.   The relief was granted.   On page 8, in discussing the power of a court of equity to protect purchasers, the court says: "And the general rule upon this subject may be safely stated in these words:   A court of equity should issue an injunction to stay an action at law upon a promissory note for the purchase price until the defense of reduction arising out of the same transaction is allowed whenever the remedy at law is less certain, prompt, and efficient to attain the ends of justice, either because the interests of the parties require that the title to the land should be perfected, that their rights should be adjudicated, and that the litigation over it should be closed—a result which no remedy at law is adequate to accomplish—or because it entails circuity of action, or because there is serious danger of unjustifiable loss or injury to the vendee, which a court of equity may, but a court of law cannot, prevent."   And see *Fehrle* v. *Turner,* 77 Ind. 530; 4 Pomeroy's Eq. Juris., Sections 1362 and 1363; *Simpson* v. *Hawkins,* 1 Dana (Ky.) 303; *Denny* v. *Wickliffe,* 1 Met. (Ky.) 216; *Cooper* v. *Singleton,* 19 Texas, 260, 267, and *Aleck* v. *Jackson,* 49 N. J. Eq. 507, as to the granting of relief by injunction. And see, also, *Harris* v. *Smith,* 2 Dana, 10; *Estell* v. *Cole,* 52 Texas, 170; *Styer* v. *Sprague,* 63 Minn. 414; *Begole* v. *Hershey,* 86 Mich. 130; *Illingworth* v. *Rowe,* 52 N. J. Eq. 360; *Van Winkle* v. *Owen,* 54 N. J. Eq. 253, and *Parks* v. *Jackson,* 11 Wend. 442, 450, as similar or in some respects analogous cases in which are enunciated principles as to equity jurisdiction worthy of consideration in the present case.

It is true that it is generally held that a purchaser in undisturbed possession of land will not be relieved in equity against the payment of purchase money on the *mere*

ground of defect of title. *Patton* v. *Taylor,* 7 How. (U. S.) 132, and *Abbott* v. *Allen,* 2 Johnson's Chancery (.N Y.), 519, are cases of this kind. But these cases are clearly distinguishable from the present one which does not rest for equitable relief solely upon an alleged defect of title, but also upon an agreement for a deferring of the payment of part of the purchase money until the validity of the alleged defect be determined, with the added provision for a deduction from the purchase money, if the defect be established. *Williams* v. *Neely, supra,* which was decided in 1904 by the United States Circuit Court of Appeals for the Eighth Circuit, and which discusses at length in connection with numerous cited decisions the equitable grounds for injunctive relief against the collection of purchase money when the title is defective we regard as correctly presenting the doctrine which should govern the court in its action in the case at bar.

One of the stated reasons of appeal is, that the decision of the Superior Court upon which the decree appealed from is based was erroneous in finding that Mrs. Budlong is a proper party to the bill of complaint by reason of her having an equitable lien for unpaid purchase money. In *Kent* v. *Gerhard,* 12 R. I. 92, the court held that a vendor had a lien for unpaid purchase money on the land sold which was enforceable by a suit in equity.

In *Perry* v. *Grant,* 10 R. I. 334, 339, the court adopted the rule "that the lien will be considered as waived, whenever any security is taken beyond the personal obligation of the vendor, unless there is an *express agreement* or proviso that the lien shall be retained." In that case the grantee gave to the vendor his note for the purchase money endorsed or guaranteed by a third person and it was held that the lien was thereby lost. In the present case, if the four promissory notes endorsed as required by the agreement had been delivered to Mrs. Budlong, it is clear upon the authority of *Perry* v. *Grant* that her vendor's lien would have been lost. But they never have been delivered, and it appears that she

is not yet entitled to their delivery. We do not think therefore that she can be held to have waived her vendor's lien for such portion of the purchase money as may yet be found to be due. In *Styer* v. *Sprague, supra*, a complainant had conveyed land by warranty deed with full covenants with a stipulation that a portion of the purchase money should remain in the hands of a third person until the title was quieted and the cloud removed. A question was raised as to whether she had sufficient interest to maintain the bill in equity to remove the cloud. On page 418 the court says: "Whatever the rule might be where the right to bring the action depended solely upon the fact that the plaintiff was liable upon full covenants contained in a previously executed warranty deed, we are of the opinion that where in addition to the execution and delivery of such a deed, the grantee taking possession, it has been stipulated between the latter and the grantor that a portion of the consideration shall remain in the hands of a third party until the title is quieted and the cloud removed, the grantor retains sufficient interest in the subject-matter and in the land to enable him to maintain a bill in equity for necessary and adequate relief. . . . The grantor in such a case is not only bound by his covenants of warranty, but has an interest in the subject-matter and in the premises sufficient for all practical purposes when his action is brought."

(5) See, also, *Begole* v. *Hershey, supra*, and 6th Pom. Eq. Juris., § 730 and cases in note 16. If in such circumstances a vendor can bring a suit against the adverse claimants, and join the vendee as party therein, no good reason is apparent why a vendee in a suit to remove a cloud on the title may not join a partially unpaid vendor as a party. See *Brooks* v. *Fowle*, 14 N. H., 248, 2d paragraph of syllabus and page 258; Maupin on Marketable Title, p. 723.

(6) Moreover, an attachment of real estate is treated as creating a lien thereon. See *DeWolf* v. *Murphy*, 11 R. I. 630. It constitutes a cloud on the legal title and the right acquired by the attachment is sufficient to justify an attach-

ing creditor in filing a bill in equity to clear the property from the adverse claims or in applying for an injunction against the sale of the property under an execution issued on a subsequent judgment. 6 Corpus Juris, 269. On both grounds Mrs. Budlong appears to be a proper party to the bill.

Another objection is that it is apparent on the face of the bill that no case is made in that the complainant has not clearly and directly alleged title in itself to the lands in controversy. The bill is claimed to be fatally defective in this respect and that the defect can be taken advantage of in an application for a preliminary injunction.

(7)    It is well settled that the bill, petition or complaint to remove a cloud must show some title in the plaintiff to the land in controversy. 17 Ency. Pl. & Pr. 300; 32 Cyc. 1328. This may be done by the averment of the ultimate fact of title or by the averment of ownership or by stating facts which show title. 32 Cyc. 1350, 1351; 17 Ency. Pl. & Pr. 328, 330, and cases cited. While there is no express assertion of title in the complainant the bill alleges however that at the time of her conveyance Mrs. Budlong "had at least an undivided half interest or share in said land and rights, if not the sole ownership thereof," and that she conveyed all her right, title and interest therein to the complainant. We think this is a sufficient averment to title in the complainant.

Other objections, some formal in character, have been urged. In fact the case has practically been argued as fully as if before the court on demurrer. The papers in the case show that a demurrer has been filed since the hearing on the application for a temporary injunction. We do not consider it necessary to now discuss the other objections raised. Such as urge formal and consequently amendable defects, if found to exist, may be more appropriately considered when the demurrer is argued.

As we are of the opinion that the bill makes a *prima facie* case and states substantial grounds for equitable relief by

injunction against the prosecution of the action at law of the appellant pending a conclusive determination of the controversy as to the title of the property in question, we find that her appeal is not well taken. It is accordingly denied and dismissed.

The cause is remanded to the Superior Court for further proceedings.

*Gardner, Pirce & Thornley,* for complainant.
*Wilson, Gardner & Churchill,* for respondent.