ALF E. ANDERSON, executor, *vs.* OLGA J. BEAN & others.

Suffolk.    November 7, 1929. — September 11, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Trust*, Administration by trustee, Trustee's accounts, Investments by
trustee, Capital and income, Sale of property by trustee, Termination.
*Probate Court*, Jurisdiction, Accounts, Findings by judge.  *Devise
and Legacy*.  *Capital and Income*.  *Corporation*, Dividend, Reorgani-
zation.  *Words*, "Business."

A probate court, at hearings upon accounts of a trustee under a will, has
jurisdiction to consider and adjudicate, and power to grant relief re-
specting contentions by beneficiaries of the trust that distributions
made by the trustee and shown in the accounts were improper; that
under the provisions of the will the trust had terminated previous to
the periods covered by the accounts; that a continuation of an in-
vestment of trust funds in stock of a Massachusetts corporation organ-
ized to take over assets of a Maine corporation, stock of which had
been held by the trust, was improper; that the trustee improperly
had failed to distribute as income part of the stock of the Massachu-
setts corporation received from the Maine corporation; that the bene-
ficiaries were entitled to dividends from surplus of the Massachusetts
corporation; and that the trustee improperly had sold stock of the
Massachusetts corporation in such a way as to affect the control in a
stockholders' meeting to the injury of the trust.
Where, upon an appeal by beneficiaries under a trust created by will from
a decree which was entered after a hearing where the evidence was
reported by a stenographer appointed under G. L. c. 215, § 18, as
amended, and which allowed accounts of the trustee, except as to an
item not in controversy on the appeal, it appeared that the judge of
probate made a general finding in favor of the accountant, the impli-
cation of such finding was that the trustee had been free from fault
and had administered the estate in accordance with his duty under
the will and the applicable principles of law.
In such circumstances, the final decree imported a finding of all facts
necessary to the result stated in the decree, although not otherwise
specified; and, where the findings appeared to be amply supported by
the evidence reported, they must be accepted on the appeal as true,
leaving only questions of law to be determined by this court.
A testator, who died in 1908, had owned one half of the capital stock of
a Maine manufacturing corporation, the other half of which was owned
by his brother, and with the brother had owned in moities the real
estate upon which the corporation did business in this Common-
wealth.  By his will he established a trust which included such stock

and real estate interests, appointed the brother as trustee, empowered the trustee "to retain said investments" and directed "that the judgment of the said" brother "who has been associated with me for many years in the building up and carrying on of said business, shall be final and conclusive as to the continuance of said investments and as to the management of said business, and he shall not be held answerable for any depreciation or loss which may come to my said property by reason of continuing the same in such. investments as the same may be at the time of my decease." The will further provided that the trust "shall continue so long as the said . . . [brother] shall live, or until he shall determine to retire from the management and control of the said business. . . . Upon the death of said . . . [brother], or upon his retiring from business, the said trust shall be ended and determined as to all the property and estate placed in trust hereunder, except only such portion thereof as may be necessary to provide for" certain annuities; and with respect to investments and reinvestments the trustee was given wide discretion and was to be liable only for "willful defaults." In 1922 the capital stock of the Maine corporation comprised two thousand shares of which the brother owned one half as an individual, and one half as such trustee. Its surplus was more than twice its capital stock. In that year, for purposes of lightening the burden of taxation, it transferred all its assets to a newly organized Massachusetts corporation of the same name, receiving therefor all but three of the entire issue of six thousand shares of the Massachusetts corporation, the Massachusetts corporation agreeing to pay all the Maine corporation's debts. Restrictions in the by-laws of the two corporations upon sale and transfer of stock were essentially similar. It did not appear that any beneficiary of the trust had suffered by the reorganization. The trustee acted in good faith, and as a result of the reorganization held the stock of the Massachusetts corporation in the same proportions, as trustee and as an individual, as he previously had held that of the Maine corporation. *Held*, that

(1) The reorganization did not result in a retirement by the trustee from the "business" under the provisions of the will, and therefore did not effect a termination of the trust;

(2) There was no support for a contention that the continuation of the trust investment in stock of the new corporation was not authorized;

(3) A distribution as income of all dividends received on the stock of the new Massachusetts corporation was proper;

(4) The existence of the restrictions on the sale of stock in the Massachusetts corporation did not of itself make improper the investment of the trust fund in that stock;

(5) There being, in the corporate action in the process of the reorganization, no separation between the capital and the surplus of the Maine corporation in the transfer of its assets and business to the Massachusetts corporation in return for shares of its stock, the shares so received by the trustee as a stockholder of the Maine corporation became capital, and were not subject to distribution by him as income.

It appearing that the trustee in the circumstances above described had acted in good faith in not causing the Massachusetts corporation to declare cash dividends from surplus in sums substantially larger than those that had been declared, it was *held*, that the court would not go behind the acts of the corporate entity in an attempt to investigate the affairs of the corporation or the acts of the trustee in order to ascertain whether larger dividends should have been declared, although the trustee, through his holdings of the capital stock of the corporation as trustee and as an individual, was in absolute control of it.

A sale, by the trustee under the will above described to four different purchasers, of such a number of the shares of stock in the new corporation held in trust that the equality of ownership theretofore existing between him as an individual and him as trustee was broken and he as an individual in concert with any one of four purchasers might exercise control of the corporation, where it appeared that the trustee in so doing acted in good faith, that there was no direct dealing with the trust estate by him as trustee in the interest of himself as an individual, that no harm resulted to the trust or to any beneficiary, and that no profit resulted to him as an individual, did not, under the provisions of the will, make him accountable as for a breach of the trust.

PETITIONS, filed in the Probate Court for the county of Suffolk, respectively on July 13, 1928, by Johan M. Andersen and on February 18, 1929, by the executor of his will, for allowance of the fourth and fifth accounts of John M. Anderson as trustee under the will of Albert Anderson, late of Boston.

At the hearing on the accounts, a third account of the trustee, which had been filed on July 16, 1925, and allowed without objection on August 20, 1925, was reopened.

The petitions for allowance of the three accounts were heard by *Dolan*, J., upon an agreed statement of facts and other evidence, a stenographer having been appointed under G. L. c. 215, § 18, as amended. Material evidence and findings and rulings by the judge of probate are stated in the opinion. By order of the judge, a final decree was entered allowing the accounts with an amendment not material to this appeal. Albert B. and Andreas Anderson and Olga J. Bean appealed.

*A. Lincoln*, (*F. M. Carroll* with him,) for Olga J. Bean.

*W. H. Hitchcock*, (*W. L. Allen* with him,) for Albert B. and Andreas Anderson.

*A. W. Blakemore*, (*T. H. Russell* with him,) for Alf E.

Anderson, executor of the will of Johan M. Andersen, trustee.

RUGG. C.J.    This case comes before us on appeals, by several beneficiaries, from a decree of a probate court allowing accounts of the administration of a trust created by the will of Albert Anderson.    The propriety of certain acts of the trustee in the management of the estate is challenged.

Some of these acts relate to distributions already made to beneficiaries under the terms of the trust.    Questions of that nature, when confined to the past and not seeking guidance for the future, rightly may be considered on a petition for the allowance of an account by a fiduciary. *New England Trust Co.* v. *Eaton,* 140 Mass. 532, 533, 534. *Lincoln* v. *Aldrich,* 141 Mass. 342.    A probate court has ample power to grant relief to the beneficiaries of a trust upon an accounting by the trustee touching all matters here in issue.    This is the appropriate proceeding in which to adjust such controversies.    G. L. c. 206, § 4.    *Green* v. *Gaskill,* 175 Mass. 265, 269.    *Burns* v. *Hovey,* 242 Mass. 363, 366.    *State Street Trust Co.* v. *Walker,* 259 Mass. 578.

The case was heard upon an agreed statement of facts and upon oral and documentary evidence.    Salient facts are that the testator died and his will was allowed in 1908, and John M. Anderson, his brother and business associate for many years, if not throughout his active business career, was appointed trustee under his will.    The testator left two sons, both of whom were residuary beneficiaries as to income and remainder of the trust established by his will. Another beneficiary was Olga M. Garllus, now deceased, whose married name was Bean.    She had lived in the family of the testator from her early childhood and at his death a petition by him for her adoption was pending.    Her daughter, Olga J. Bean, is an appellant.    At the time of his death, the testator and the trustee under his will each owned one half of the capital stock in the Albert and J. M. Anderson Manufacturing Company, a Maine corporation, and each owned one undivided half interest in certain real estate in Boston occupied by the corporation as a part of its plant. The business of the corporation was manufacturing and

selling electrical machinery, appliances and equipment. Prior to the death of Olga M. Bean, *née* Garllus, the residuary income of the trust, after paying certain annuities, was divided equally between the two sons of the testator and said Olga, and since that time has been divided equally between the two sons, all in accordance with the decision in *Anderson* v. *Bean*, 220 Mass. 360. Olga J. Bean and each of the sons of the testator have a one third interest in the remainder of the trust. The trustee died in 1928.

After his qualification as trustee under the will, the trustee held one half of the shares of stock in the Maine corporation in his own right as an individual and the other half in his capacity as trustee. In 1922 the assets and business of the Maine corporation were transferred to a newly organized Massachusetts corporation of the same name. Without now stating the details, it is enough to say of that transaction that the Maine corporation, having accumulated a surplus equal to more than twice its capital stock, which was $200,000, divided into two thousand shares, received for the transfer of its assets and business five thousand nine hundred ninety-seven out of a total of six thousand shares of the par value of $100 each in the Massachusetts corporation. The Massachusetts corporation received in return for this issue of its stock all the assets and business of the Maine corporation and agreed to pay all its debts. The Maine corporation distributed to its stockholders the shares of stock in the Massachusetts corporation received by it for the transfer of its assets and business. When the transaction was completed the capital stock of the new corporation was held in the same way as was that of the Maine corporation, one half by the trustee in his own right as an individual, and one half in his capacity as trustee. There was a restriction upon the transfer of stock in both corporations to the effect that a holder desiring to sell must first offer his shares to the directors for sale, the price, under the by-law of the Maine corporation, to be fixed by agreement or by some third person to be selected, and, under the by-law of the Massachusetts corporation, to be fixed by appraisal to be made by the directors. The by-law of the

Massachusetts corporation followed in substance that held valid in *New England Trust Co.* v. *Abbott*, 162 Mass. 148, and in other later cases. *Albert E. Touchet, Inc.* v. *Touchet*, 264 Mass. 499, 506–507. The corporate reorganization appears to have been made for the purpose of lightening the burden of taxation. It was made under the advice of the trusted attorney of the testator and his trustee and of the corporation. The restrictions on transfer of stock in the by-law of the new Massachusetts corporation, so far as they differ from those of the Maine corporation, are not of special legal signification on issues here raised. It does not appear that any beneficiary has suffered loss by reason of this corporate reorganization. The trustee never took any compensation for his services as trustee, although express testamentary provision was made for reasonable compensation for him. The evidence also shows that the trustee as the managing head of the corporation received no more than a modest salary for the services performed by him.

The trial judge did not find that there had been any breach of trust by the trustee, and found that all the items of the account were correct and allowed them all save a single item concerning which now no controversy is made. The implication of the general finding in favor of the accounts is that the trustee was free from fault and has administered the estate in accordance with his duty under the will and the applicable principles of law. The final decree imports a finding of all facts necessary to that result, although not specified. These findings appear to be amply supported by the evidence. They must be accepted as true. *Corkery* v. *Dorsey*, 223 Mass. 97, 100. Only questions of law need to be discussed.

1. It is contended that the corporate reorganization of 1922 and the transfer of the business to the Massachusetts corporation terminated the trust. The settlement of that controversy depends upon the interpretation of these provisions of the will: "And whereas a large part of my property is now invested in the capital stock of the Albert & J. M. Anderson Manufacturing Company and in the

land and building used by said corporation, I hereby empower my trustee or trustees hereunder to retain said investments and I direct that the judgment of the said John M. Anderson, who has been associated with me for many years in the building up and carrying on of said business, shall be final and conclusive as to the continuance of said investments and as to the management of said business, and he shall not be held answerable for any depreciation or loss which may come to my said property by reason of continuing the same in such investments as the same may be at the time of my decease. The trust established by this paragraph of my will shall continue so long as the said John M. Anderson shall live, or until he shall determine to retire from the management and control of the said business so carried on under the name of the Albert & J. M. Anderson Manufacturing Company. Upon the death of said John M. Anderson, or upon his retiring from business, the said trust shall be ended and determined as to all the property and estate placed in trust hereunder, except only such portion thereof as may be necessary to provide for the annuities hereinbefore established." In the solution of the problems here presented the intent of the testator must be ascertained, attributing due weight to all words used by him, and then effect must be given to that intent unless some positive rule of law prevents. *Ware* v. *Minot*, 202 Mass. 512, 516. *Temple* v. *Russell*, 251 Mass. 231, 235. The meaning of the quoted provision of the will is that the testator had his mind fixed on the industrial enterprise rather than on the particular corporate entity, as the subject of investment of a large part of his estate. The word "business" occurs four times in this part of the will. The first reference is to its "building up and carrying on" by the testator and his trustee. That embraces the beginning, which apparently was a partnership between these two brothers, and an earlier Massachusetts corporation as well as the Maine corporation existing at the time the will was executed and became operative. It is touching the continuance of those investments in and the management of "said business"

thus established and developed that the "judgment" of the trustee is to be "final and conclusive." The termination of the trust is fixed to be the death or retirement of the trustee "from the management and control of the business so carried on under the name of the Albert & J. M. Anderson Manufacturing Company." The termination is not made dependent upon his retirement from the particular corporation but from the "business" then conducted under the specified name. The confidence of the testator that his trustee brother would continue to be identified with the enterprise which they had built up together is somewhat confirmed by the use of the word "business" for the fourth time in an abstract rather than a concrete sense. It is apparent that the testator was dealing in this part of his will, not with the legal form but with the manufacturing and commercial undertaking in which so large a part of his estate was embarked. A clear distinction is drawn between that enterprise on the one hand and the organization whereby it was conducted on the other hand; the former was the substance, the latter merely the garment. The spirit and intent of the testator disclosed by the words used, viewed in the light of his own career and his relationship with his trustee and their long association, make sufficiently plain a purpose to found and maintain the structure of his trust on the business and not on a designated corporation. The change wrought by the reincorporation of the business was a transfer of its legal domicil to the jurisdiction where it was conducted, without essential alteration in its character or financial basis. So far as concerned the manufacture and sale of commodities, it remained in substance the same as before. The new corporation manifestly was a different legal entity from the old corporation. That difference cannot be disregarded. *Brighton Packing Co.* v. *Butchers' Slaughtering & Melting Association,* 211 Mass. 398, 403, 404. *Chilson* v. *Mayor of Attleboro,* 247 Mass. 191, 202 and cases collected. *H. P. Hood & Sons* v. *Perry,* 248 Mass. 350. *Syrian Antiochean St. George Orthodox Church* v. *Ghize,* 258 Mass. 74, 81. It is not necessary to consider the differ-

ences between the two corporations. From the viewpoint of the testator as shown by his governing words, the management and control of the identical business in which he was interested continued to be exercised by his trustee with the same position of dominance in the new corporation as in the old. A new means had been established as the instrumentality for prosecuting and promoting the business, but the business remained the same. There was no retirement by the trustee from that business. Hence the trust did not then end.

2. The contention that the continuation of the trust investment in stock of the new corporation was not authorized cannot be supported. In a sense that was a new investment. *Osgood* v. *Tax Commissioner*, 235 Mass. 88, 91. The analysis already made of the testamentary provisions controlling this branch of the case indicates that this reinvestment was authorized. The trustee was empowered to retain the "investments" in the capital stock of the business corporation then existing and in the real estate used by that corporation. As already shown, the "business" and not the stock in a particular corporation was the foundation on which the trust was erected. The trustee was given full power to invest and reinvest the corpus of the trust and its accretions in addition to the wide discretionary powers, already quoted, vested in the judgment of the trustee as to the continuance of the particular investments and the conduct of the business. In respect to his management in all these particulars, the will provided further that the trustee should be liable only for his "willful defaults." The course pursued by the trustee with respect to the reincorporation and the continuance of the investment of the trust estate in the "business" shared by him with the testator was well warranted by the terms of the will. While no two cases are exactly alike, the principles declared in *Pope* v. *Hinckley*, 209 Mass. 323, *Bartlett* v. *Slater*, 211 Mass. 334, 339, *Old Colony Trust Co.* v. *Shaw*, 261 Mass. 158, 163, 167–168, are controlling in the case at bar. It is not necessary to review cases where without special testamentary authority investments by trustees hazardous in nature or

disproportionately large in amount have been discussed. *Kimball* v. *Whitney*, 233 Mass. 321, 331–334 and cases there collected. *Ball* v. *Hopkins*, 268 Mass. 260. Such decisions are not relevant in view of the wide boundaries established by the testator in his will for exercise of the discretionary powers of this trustee.

Since the investment in shares of stock of the Massachusetts corporation was justified by the will, the distribution of dividends on that stock was proper. There is no occasion to deal with the contention that such dividends should be apportioned between principal and income. There is no room for the application of the rule of *Kinmonth* v. *Brigham*, 5 Allen, 270.

The existence of the restriction on the sale of stock in the Massachusetts corporation did not of itself make improper the investment of the trust fund in that stock. The finding, so far as it is one of fact, is in favor of the trustee as shown by decree allowing the accounts. There was a somewhat similar restriction in the Maine corporation. It is not uncommon. The directors in making the appraisal thereby required act as fiduciaries and their duties may be enforced in equity. *Adams* v. *Protective Union Co.* 210 Mass. 172, 176.

3. Another contention is that the trustee wrongfully failed to distribute as income a portion of the stock in the Massachusetts corporation received by him from the Maine corporation, but on the contrary treated all the stock so received as capital. That contention is rested on the fact that the Massachusetts corporation voted to issue five thousand nine hundred ninety-seven shares of its stock to the Maine corporation in consideration of the transfer to it by the Maine corporation of all its assets and property except a certain claim not here material and except an amount equivalent to its surplus in excess of $400,000. This excess surplus, amounting as shown on its books to a sum slightly more than $105,000, was to be transferred to the Massachusetts corporation but credited to its acquired surplus account, and the Massachusetts corporation agreed to assume and pay all debts and liabilities of the Maine corporation and to

perform all its contracts. The Maine corporation passed appropriate votes on its part accepting the offer in terms of corresponding tenor and the transaction was completed on this footing. It is urged that these votes and the consequent offer and acceptance and the consummated transaction in accordance therewith constitute a recognition of a surplus in the Maine corporation, and that the purchase and transfer were on the basis of the issue of two thousand shares of the stock of the Massachusetts corporation for the two thousand shares of capital stock of the Maine corporation and the issue of four thousand shares for the portion of the surplus equivalent to the par value of those shares. It is sought to draw the conclusion from these facts that four thousand of the shares in the Massachusetts corporation thus received by the stockholders of the Maine corporation constitute a distribution of income and, so far as concern the part of those shares received by the trustee, ought to have been distributed as income to the life tenants and not held by him as capital. Reliance is placed in this connection on *Gray* v. *Hemenway,* 268 Mass. 515 and numerous cases there collected and reviewed, where a corporation having in its possession as part of its surplus, stocks or securities of other corporations, has distributed such stocks and securities in whole or in part to its stockholders, while at the same time retaining assets equalling or exceeding its capital stock and continuing all its corporate activities. The conclusion thus urged does not follow from the corporate acts here disclosed. So far as depending upon facts to be found by the trial judge, the finding is against it. He found that the distribution of the stock in the Massachusetts corporation was in effect a liquidation of the Maine corporation. All the stock of the Massachusetts corporation was distributed to the stockholders of the Maine corporation in substitution for the stock in the Maine corporation and not as a dividend upon it. This conclusion is amply supported by the record of the votes of the Maine corporation. No part of it was received as an accretion to its surplus. It was all received as consideration for the sale of all its assets and business. In the transfer of its assets and business to the Massachusetts corporation

there was no separation between the $200,000 capital and the $400,000 surplus. It all went as one bulk. It was commingled in a common mass. The stock received in payment for that transfer was not separated between capital and surplus. The stock as a unit was delivered and received in payment of the assets and business transferred as a unit. No vote or act of the Maine corporation indicates a purpose to distribute the stock on any other footing than a final winding up of its affairs and a single distribution of all assets to its stockholders on a single common footing. The substance of that vote was that three shares of the stock of the Massachusetts corporation (when received in accordance with previous votes for transfer of the assets and business of the Maine corporation) should be distributed among its shareholders for each share of stock in the Maine corporation, with a trifling exception not here material. Afterwards the Maine corporation was dissolved. The natural interpretation of this transaction is that it was a method of liquidation of the Maine corporation. The stock received by it for the transfer of its assets and business was all of one kind. It was all received for one purpose. No part of it was segregated as income or surplus apart from capital. No part of the distributed stock was earmarked as capitalization of surplus. No part of it was distributed as income. It was all distributed on the single basis of liquidation of the affairs of the Maine corporation and was distributed ratably among its stockholders. In this Commonwealth in general "everything is made to turn upon the action of the corporation." *D'Ooge* v. *Leeds,* 176 Mass. 558, 560. The action of the Maine corporation was unequivocal to the effect that this was a distribution of capital in liquidation. This result follows as matter of law from the corporate acts of both corporations. Dividends in liquidation of a corporation are capital and not income. *Talbot* v. *Milliken,* 221 Mass. 367, 368. The case on this branch is governed by *Gifford* v. *Thompson,* 115 Mass. 478, and *Brownell* v. *Anthony,* 189 Mass. 442, 445. The binding force of these decisions is recognized in *Gray* v. *Hemenway,* 268 Mass. 515, 522. To the same effect are other authorities.

*Wilberding* v. *Miller*, 88 Ohio St. 609. *Bulkeley* v. *Worthington Ecclesiastical Society*, 78 Conn. 526. The fundamental difference is between a distribution of stock of another corporation acquired by the distributing corporation as a part of its surplus, which commonly is income to the stockholder, on the one side, and distribution of stock of another corporation acquired by transfer of capital assets including surplus as a step in liquidation of the distributing corporation, which commonly is capital, on the other side. The case at bar belongs to the latter class.

4. A further contention is that the residuary beneficiaries of income were entitled to receive income as cash dividends from the corporation to an amount substantially greater than actually paid. The amount of dividends actually declared confessedly has been accounted for. The general principle is that stockholders have no individual interest in the profits of a corporation until a dividend has been declared, that the accumulation of a surplus does not of itself entitle stockholders to a dividend, that the time when a dividend shall be declared and its amount rest in the sound discretion of the corporation or its authorized officers, usually the board of directors, that the action of such officers will not be disturbed if taken in good faith according to law and not in plain violation of the rights of stockholders, and that rational presumptions will be indulged in favor of the honest decision of such officers. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 537. *Fernald* v. *Frank Ridlon Co.* 246 Mass. 64, 71. *Nutter* v. *Andrews*, 246 Mass. 224, 227. *Lee* v. *Fisk*, 222 Mass. 418, 421. *Thomas* v. *Laconia Car Co.* 251 Mass. 529, 535. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1, 5. *Adams* v. *Eastern Massachusetts Street Railway*, 257 Mass. 115, 131. *Morse* v. *Boston & Maine Railroad*, 263 Mass. 308, 311. It is urged that the case at bar constitutes an exception to the general rule because the trustee owning one half the stock in his own right and one half as trustee was in absolute control of the corporation and was bound to do what a court of equity may think he ought to have done in way of declaration of dividends,

and that to this end the corporate entity ought to be regarded as a fiction. This contention cannot be supported. The trustee acted in good faith. There is nothing to indicate that his entire management of the corporation was not sagacious to a high degree and that as a result through the two decades of his stewardship the dividends in the aggregate were not enhanced by the surplus accumulated above what they would have been if the earnings had been distributed in dividends year by year. The business appears to have been subject to considerable fluctuation from time to time. Its stability and prosperity may have been dependent upon the use of a large surplus. The finding by the trial judge that there was no breach of trust by the trustee means that there was no private gain by him at the expense of the trust and that in the exercise of his dominating power in the management of the corporation the dividends actually declared and the surplus accumulated were in accordance with his sound judgment for the benefit of all concerned in the trust, without personal bias and with due regard to his every duty under the trust. It was that sound judgment on which the testator depended in the establishment of the trust. It was that judgment which he declared should be "final and conclusive . . . as to the management of said business." So far as disclosed by this record, the wisdom of thus vesting extensive power in the trustee has been demonstrated by the event, and a profitable industrial undertaking has been developed to the manifest financial advantage of the trust. Good faith in the exercise of this testamentary power does not present one of those rare instances where a corporate entity is to be ignored. The court in these circumstances will not go behind the acts of the corporate entity in the attempt to investigate the affairs of the corporation or the acts of the trustee. The well recognized general rule is applicable to this branch of the case. *Rand* v. *Hubbell,* 115 Mass. 461, 474. *Marsch* v. *Southern New England Railroad,* 230 Mass. 483, 498.

All the corporate dividends (except the one in liquidation of the Maine corporation) were paid in cash. It

follows that they were all treated as income by the trustee following the usual rule. *Talbot* v. *Milliken*, 221 Mass. 367. *Coolidge* v. *Grant*, 251 Mass. 352, 354 and cases cited.

5. The trustee on April 1, 1926, out of the three thousand shares held by him as trustee, sold one hundred shares as follows: twenty-five shares each to his son who was treasurer and a director of the corporation, to the two sons of the testator who were also directors, and to the superintendent. The price at which this stock was sold was fixed by appraisal by the directors as required by the by-law of the corporation. Thus the trustee as individual owner continued to hold three thousand shares, the trustee in his trust capacity held twenty-nine hundred shares, and the one hundred shares sold from the corpus of the trust was divided equally among the four other persons just described. The equality of ownership theretofore existing between the trustee as an individual and the trustee as fiduciary was broken. The trustee as an individual in concert with any one of the four to whom twenty-five shares were sold would exercise control of the corporation. It was found by the trial judge that this sale was not made by the trustee for the purpose of securing such control. He found further touching this matter: "On all the evidence I find that the present value of the capital stock of the Anderson corporation held by the trust estate is equal to if not in excess of its value when the deceased trustee sold one hundred shares of the stock held by the trust, and that no loss has accrued to the beneficiaries by that sale, which I find was made by the deceased trustee in good faith and in the exercise of the power reposed in him by the will of the testator. If the directors of the Anderson corporation do not do their duty in connection with the appraisal of the shares upon distribution by the succeeding trustee, the remedy is against them and would seem to be adequate. There is no evidence upon which I could find that the deceased trustee sold said shares with any intent to pass control so that upon termination of the trust an unfair advantage could be taken of the beneficiaries." These findings must be considered in conjunction with the broad

powers conferred upon the trustee by the will and with the special provision in the will that the trustee should be liable only for "willful defaults" and should not "be answerable for any loss or damage which may happen to the trust premises without his willful default." So far as there was testimony bearing upon the reason for making this sale, it was to the effect that it was thought desirable that the superintendent should have a financial interest in the corporation.

We are of opinion that all these factors in combination relieve the trustee from any accountability to the trust for this sale beyond the price received. There is good faith, no direct dealing with the trust estate by the trustee for himself as an individual, no harm to the trust or to any beneficiary, no profit to the trustee, broad general power in the trustee and testamentary exoneration of the trustee from all liability except for wilful default. Without unduly emphasizing any one of these factors, it is to be observed that this testamentary exoneration goes far toward absolving an honest trustee from responsibility for unconscious mistakes. In *Warren* v. *Pazolt*, 203 Mass. 328, 347, it was said that in such context "Wilful default means intentionally making away with the trust property." How far this principle may go in protecting a trustee from violating fundamental principles of trusteeship need not be considered. The present case is not close to the line. The disturbance of the equal balance of holdings of stock by the trust and by the trustee as an individual is not as matter of law, apart from other circumstances, unconscionable advantage or disadvantage. Mere equality of holdings of stock between two hostile interests does not assure tranquility of corporate management. See *Cook* v. *Cook*, 270 Mass. 534. The case at bar is distinguishable from *Scott* v. *Ray*, 18 Pick. 360, where it was held that a partial collection from a common debtor must be applied proportionately to debts due to a trust estate and to the trustee individually.

This conclusion does not in any degree relax the general and highly salutary rule that a fiduciary owes a primary

duty to protect his trust.   No self interest can be allowed to conflict with this obligation.   He cannot derive any personal advantage at the expense of the trust, nor put himself in a position antagonistic to the beneficiaries of the trust.   *Gay* v. *Gay,* 5 Allen, 181.   *Jones* v. *Dexter,* 130 Mass. 380.   *Bowen* v. *Richardson,* 133 Mass. 293, 296. *Witherington* v. *Nickerson,* 256 Mass. 351 and cases reviewed.   *Ball* v. *Hopkins,* 268 Mass. 260, 266, 270 and cases cited.   *McComb* v. *Frink,* 149 U. S. 629.   That rule will be rigidly enforced.   It simply is not applicable to the facts here disclosed.

Every point argued by the several appellants has been considered.   No error is disclosed.   The decree is to be modified so far as to enable the judge of probate in his discretion to allow to the appellee costs out of the trust fund, and as thus modified is affirmed.

*Ordered accordingly.*