THE THIRD NATIONAL BANK AND TRUST COMPANY OF
SPRINGFIELD, trustee, *vs.* HOLBROOK CAMPBELL, guardian ad litem, & others.

Hampden.    September 26, 1957. — November 6, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Trust*, Taxes, Income beneficiary, Capital and income.

A trustee under a testamentary trust providing for the payment of the trust income to the testator's widow for life and thereafter to his daughters for their lives, with remainder over to others, rightly charged to principal rather than to income in his probate account such portion of the Federal income tax on a capital gain resulting from a sale of shares during the widow's life as was attributable to a reduction, in computing the tax, of the cost basis of the shares by reason of certain cash dividends received thereon by the trustee and properly, so far as appeared, distributed to the widow, which had been "treated as a return of capital" and not as constituting taxable income for Federal income tax purposes and consequently had been taken by the widow income tax free.

PETITION, filed in the Probate Court for the county of Hampden, for the allowance of certain accounts.

The case was heard and reported without decision by *Stapleton*, J.

In this court the case was submitted on briefs.

*Robert W. Bozenhard*, for the petitioner.

*Holbrook Campbell*, guardian ad litem, pro se.

CUTTER, J.  The trustee under the sixth clause of the will of Frank M. West has presented three accounts for allowance.  A guardian ad litem, appointed to represent persons unborn or unascertained who may become interested in the trust estate, challenges the propriety of one item charging to principal certain Federal income taxes on capital gains.  He agrees, however, that all other items in the accounts are proper.  The facts are stipulated and the case is reported to this court by the probate judge without decision in accordance with G. L. (Ter. Ed.) c. 215, § 13.

Frank M. West, by his will, gave the residue of his estate to his trustee in trust to pay the income to his widow (who is still living) for her life.[1]  At the widow's death the income is to be paid in equal shares to the testator's two daughters (each of whom is still living and unmarried) for their lives, with remainder over at their respective deaths to persons not now ascertainable.  The trustee may either allow the trust estate "to remain as invested, or . . . invest or reinvest the same" in such investments as savings banks are permitted to make in this Commonwealth.

Among the original trust assets transferred to the trustee were three hundred shares of each of two real estate trusts owning residential real estate in Cambridge.  During the years 1941 to 1952, inclusive, the trustee received cash dividends upon these shares in the aggregate amount of $33,600. The trustee was advised that $28,227.10 of these dividends (hereafter for convenience called the "tax exempt" income) did not constitute taxable income for Federal income tax purposes, because it was "treated as a return of capital for . . . [such] purposes."  All of these cash dividends (including the "tax exempt" income) were distributed to the widow and she did not report the "tax exempt" income as income on her Federal income tax return.

In 1953, during the period covered by the accounts here under review, the trustee sold the shares in the two real estate trusts at a substantial profit over the inventory value. For purposes of computing the Federal income tax on the capital gains, however, the trustee found it necessary to reduce the cost basis of the shares for Federal income tax purposes "by the aggregate amount of so called 'tax exempt' income received by" the trustee and paid to the widow from

---

[1] The will gave to the trustee power, if the widow "shall by reason of want, sickness or necessity, need any . . . principal . . . to pay to her . . . from the principal such a sum . . . as my children . . . shall from time to time approve."  The question here raised has been considered without regard to this provision, since the record discloses no action by the trustee, with respect to the distribution to the widow of the "tax exempt" income (mentioned below), which would constitute compliance with the provision.

1941 to 1952, inclusive. These sales[1] resulted in a Federal income tax on the capital gain of $7,935.68 of which, of course, a considerable portion was caused by the reduction, already mentioned, in the cost basis of the shares of the two real estate trusts. The guardian ad litem contends that "so much of the . . . Federal capital gains tax . . . as was occasioned by the reduction . . . of the cost basis of the . . . shares" should be charged to income rather than to principal. The capital gains tax in fact was paid by the trustee entirely out of principal and was so charged in the account.

The general rule in Massachusetts is that, as between the current life beneficiary and remainder interests, all cash dividends, however large, are to be treated as income. *Minot* v. *Paine*, 99 Mass. 101, 108. *Talbot* v. *Milliken*, 221 Mass. 367, 368. This is a somewhat arbitrary, but exceedingly practical, rule of convenience (see *D'Ooge* v. *Leeds*, 176 Mass. 558, 560–561) now well established, and "[p]erhaps the strongest argument in favor of the . . . rule is its simplicity. Whether or not it would be more just to apportion . . . , it is an extremely difficult thing to do in many cases." See Scott, Trusts, (2d ed.) § 236.3 at page 1818; Restatement: Trusts (Sup. 1948) § 236. The courts will not normally go behind the determination of the corporation, trust, or association declaring the dividend as to its source, that is, whether it is to be distributed from the earnings or capital of the entity concerned (see *Gray* v. *Hemenway*, 223 Mass. 293, 295–297; *Anderson* v. *Bean*, 272 Mass. 432, 443), and, "[i]n the absence of facts showing that dividends . . . were a part of the capital of the corporation, or that the payment of them essentially impaired or diminished the value of the shares, they are to be regarded as part of the income to which the cestui que trust for life are entitled." *Lannin* v. *Buckley*, 256 Mass. 78, 84. See Loring, Trustee's Handbook (Shattuck Rev.) § 82. On the present record there is no showing that the cash dividends here in issue were improp-

[1] After taking into account certain offsets, not here material, by reason of losses on other sales of securities and a 1951 capital gains loss carry over.

erly paid to the current life tenant, or that they were in any respect a return of capital of the two real estate trusts (see *Old Colony Trust Co.* v. *Shaw*, 261 Mass. 158, 168–169; Scott, Trusts [2d ed.] § 236.14) or declared as such, or that they were liquidating dividends (compare *Anderson* v. *Bean*, 272 Mass. 432, 441–444; *Hall* v. *Evans*, 326 Mass. 691, 694–695; Scott, Trusts [2d ed.] § 236.10), which should have been added to principal. In view of the express authority given to the trustee to allow the trust estate "to remain as invested," there was no obligation on the trustee to convert to some new investment authorized by the will the real estate trust shares or to apportion the cash dividends from the real estate trust shares, even if (which does not appear on this record and, in view of the substantial profit realized upon their sale, seems unlikely) they were wasting assets. See *Old Colony Trust Co.* v. *Shaw*, 261 Mass. 158, 163–168; *Dexter* v. *Dexter*, 274 Mass. 273, 275–277; *Nelligan* v. *Long*, 320 Mass. 439, 444–446; Newhall, Settlement of Estates (3d ed.) § 375 at pages 941–942. Indeed, the guardian ad litem makes no contention that these cash dividends should have been added to principal, in whole or in part. Compare *Anderson* v. *Bean*, 272 Mass. 432, 441–444, and cases cited.

We do not regard the stipulation that the distributions were "not taxable for Federal income tax purposes" and were "considered a return of capital for Federal income tax purposes" as showing that the dividends were properly to be treated, for purposes of trust accounting, as a return of the capital of the two real estate trusts which must be added to principal. The rules governing the treatment of the dividends of corporations, associations, and trusts for income tax purposes frequently vary from the principles governing allocation of the receipts of a trust as between life tenant and remainderman. See, for example, *Follett* v. *Commissioner of Corporations & Taxation*, 267 Mass. 115, 119–121; *Holcombe* v. *Ginn*, 296 Mass. 415, 416–417.

Ordinarily, an income tax upon capital gains is to be charged to the principal of the trust as constituting "a tax upon capital transactions the substantial benefit of which

goes to capital." *Holcombe* v. *Ginn,* 296 Mass. 415, 416. See Restatement: Trusts, § 233, comment f; Scott, Trusts (2d ed.) §§ 233–233.3; Newhall, Settlement of Estates (3d ed.) § 354 at page 872; Loring, Trustee's Handbook (Shattuck Rev.) §§ 67, 71. In the present case, however, a substantial part of the benefit of the capital gains has gone to the life tenant through the receipt of the "tax exempt" income which has relieved her pro tanto of Federal income tax, while, at the same time, increasing (through the consequent reduction of the tax basis of the shares) the amount of possible capital gains tax in the event of sale of the shares. For this reason the guardian ad litem argues that it would be equitable to charge to income that portion of the capital gains tax which is caused by the reduction of the tax basis of the shares.

In practical operation, the application of the principle behind this ingenious contention would destroy the simplicity of the Massachusetts rules of allocation of trust receipts and expenses as between life tenant and remainder interests and might even work with great unfairness. Under circumstances like those here presented, it would manifestly be impractical to withhold as a reserve a portion of each cash dividend, equal to the estimated future capital gains tax on that portion of the dividend which represents a tax exempt return of capital, in order to provide for the eventuality that at some time in the future the shares producing the dividend will be sold at a profit. By our usual allocation rules the life tenant is entitled to the whole dividend. The shares may never be sold during the life of the trust or may even be sold at a loss. Any capital gain in fact realized may be offset by capital losses on other trust investments or by a carry over capital loss. It would certainly be unfair to charge the whole of such capital gains tax as is caused by the prior distribution of the "tax exempt" income solely to the income of that one of a series of life tenants who happened to be entitled to the trust income at the time the gain was realized. One or more of the life tenants who have received the benefit of such cash dividends of "tax exempt"

income may have died before it has been determined that there is to be any tax upon the sale of the shares. The tax laws or the rates of taxation on capital gains may change after the dividend is paid, thus confusing any system of reserving for future gains taxes. Other uncertainties and practical difficulties may be imagined which would make impossible the fair application of any rule charging in part to income taxes on such capital gains. Such a rule could easily become a great obstacle to efficient, simple trust administration.

Accordingly, we hold, since the record shows no impropriety in the distribution to the life tenant of the whole of the cash dividends here discussed, including the "tax exempt" income, that she took the whole of that income with all its inherent income tax advantages and benefits and without any liability to contribute to the capital gains tax when, as, and if one should be later incurred.

A decree allowing the accounts here under review as presented is to be entered in the Probate Court.

*So ordered.*