WARREN B. HUTCHINSON & another, trustees, *vs.* JOHN H. KING, guardian ad litem.

Middlesex. March 3, 4, 1959. — April 13, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Trust,* Accounting. *Probate Court,* Accounts.

Accounts rendered to a Probate Court are in an appropriate form if they comply with the directions stated in G. L. c. 206, § 2, and reflect the accountant's transactions fairly and intelligibly. [44–45]

It was proper for a trustee under a will not specifying any accounting method, upon selling rights to subscribe to corporate stock, to enter the proceeds of the sale of the rights in Schedule A of his account as a cash receipt, to reflect that receipt in the cash balance in Schedule C, and in Schedule C to reduce the book value of the shares on which the rights were issued by the amount of the cash received from the sale of the rights; no beneficiary of the trust was shown to have been affected by the trustee's failure to adopt an accounting method suggested by

a guardian ad litem of showing in Schedule A the rights received as principal at a value of zero, reporting the proceeds of the sale of the rights in Schedule A as a gain, and leaving in Schedule C the book value of the shares on which the rights were issued the same as it was before issuance of the rights. [45–46]

PETITIONS, filed in the Probate Court for the county of Middlesex, for the allowance of certain accounts.

The case was heard and reported by *Leggat,* J.

*John E. Rogerson, (Kenneth A. Korb, & Arthur D. Hill* with him,) for the petitioner.

*John H. King, (Walter Powers, Jr.,* with him,) for the guardian ad litem.

CUTTER, J. This is a report by a probate judge of a question of law arising with respect to the allowance of the second to fourth accounts of Warren B. Hutchinson and Boston Safe Deposit and Trust Company, trustees (hereinafter called the trustees), under a provision of paragraph eleventh (a) of the will of Frank T. Hutchinson. There is no provision of the will "which would affect the propriety of the accounting method employed by the accountants" and "all procedural requirements have been fulfilled." The accounts "are, except for the question raised by this report, in proper form and order for allowance." The guardian ad litem "has objected to the allowance of the accounts" asserting "that the method of accounting employed by the trustees is not proper" and does not comply in various formal respects with G. L. c. 206, § 5.

We have before us the three accounts here in question, each of which is attached to a sheet consisting of the usual page 1 of the printed form of trustee's account ordinarily used in the Probate Court. The body of the account consists of intelligible, simple, machine bookkeeping sheets, showing clearly, for schedules A and B, the cash receipts and expenditures, additions and gains, charges and losses; for schedule C, the investments of principal and their book value; for schedule D the amounts received on account of income; and for schedule E the amounts paid out and charges on account of income.

The guardian ad litem at the argument conceded that no substantive interest of the minors whom he was appointed to represent was affected by the narrow question raised by him. No question of improper action by the trustees is suggested, beyond an insubstantial question of taste in accounting. During "the accounting period, the trustees . . . received rights to subscribe to certain securities. Such rights, when sold, resulted in the receipt of principal cash." On schedule A a notation was made of the sale of such rights and, on schedule B, of their use for subscription to new shares, and the amount of cash expenditure involved in any such subscription. Except by including the proceeds of the sale of rights as an addition to principal cash, no entry was made in schedule A of any addition or gain, as such, or in schedule B of any charge or loss, by reason of the receipt and sale of the rights. "The increase in principal cash in the hands of the accountants resulting from these sales of rights has been accompanied by a change of a corresponding amount in the book value of the respective securities." Although during the accounting period rights to subscribe to several securities were involved, a single example set out in the margin[1] will illustrate adequately the method of accounting used by the trustees.

The guardian ad litem contends that the trustees should have shown in schedule A the receipt of each set of rights as an addition to principal at zero and that, when sold, a gain would be "reportable in schedule A of . . . the difference between the amount received from the sale and the cost (zero)," leaving in schedule C, unchanged at their appraised value, the original shares of stock in respect of which the rights were issued.

---

[1] The third account, schedule C, page 5, line 28, shows 44 shares American Telephone & Telegraph Co. book value $6,495.87. The fourth account, schedule A, page 2, lines 8–9, shows 11–24–53 American Telephone & Telegraph Co. $100 par value, sold 44 rights, cash receipts $104.50. The receipt of this sum of $104.50 is reflected in the total cash receipts of schedule A and in the cash balance reached in that schedule for inclusion in schedule C. Schedule C, page 5, line 28, shows American Telephone & Telegraph Co. book value $6,391.37, thus reflecting a reduction of $104.50 in the book value of these shares from that shown in the next prior account. This reduction, of course, is the amount of the cash received from the sale of the rights.

The contents of probate accounts are governed by G. L. c. 206, § 2.[2] There is no indication in its legislative history that the statute is not to be construed flexibly and reasonably. Section 2 makes no specific requirements as to the form in which particular transactions shall be reported. We see nothing in the language of § 2 which would require us to treat as improper any reasonable and orderly statement of the account in a manner consistent with the facts (cf. *Murray* v. *Massachusetts Bonding & Ins. Co.* 283 Mass. 15, 18–20), with applicable substantive rules of law, and with accounting principles and methods from time to time currently employed by competent and reputable fiduciaries, so long as they fairly and intelligibly reflect the transactions reported. See Hills, Accounting and Financial Statements, §§ 1.1–1.6. Accordingly, it is appropriate under the statute (a) to require no more complication (see *Third Natl. Bank & Trust Co.* v. *Campbell,* 336 Mass. 352, 356) in the keeping of accounts than is essential to reflect the fiduciary's transactions and (b) to permit accounts to be furnished in any reasonable form consistent with § 2. If a trustee wishes to use a more complicated or refined method of accounting than the minimum required, the statute does not forbid his doing so.[3] There is no legislative mandate that there must be absolute uniformity of method, and, indeed, varying circumstances (such as special provisions in wills) may make

[2] Section 2 reads: "Accounts rendered to the probate court by [a] . . . trustee . . . shall be for a period distinctly stated therein, and consist of three schedules, of which the first shall show the amount of personal property according to the inventory, or, instead thereof, the amount of the balance of the next prior account . . . and all income and other property received and gains from the sale of any property or otherwise; the second shall show payments, charges, losses and distributions; the third shall show the investment of the balance of such account, if any, and changes of investment. A trustee shall state . . . the receipts of principal and income separately and also the payments and charges on account of such principal and income separately." The statute has been in substantially the same form since St. 1895, c. 210. See 1895 Senate Docs. No. 104, 105, 106; 1895 House Doc. No. 977. Minor revisions, here irrelevant, were made at the time of the codification of the Revised Laws (see Report of the Joint Special Committee on the Consolidating and Arranging of the Public Statutes, 1901, p. 1339) and of the General Laws.

[3] Although the accounts taken together satisfy the requirement of G. L. c. 206, § 2, that "changes of investment" be shown, a separate table of such changes (or a notation in schedule C of any changes in book value) is a refinement which some trustees helpfully employ to avoid misunderstanding of their accounts.

that impossible. Such uniformity, in this and other comparable matters, should not be coerced by guardians ad litem or others in any effort to achieve over meticulous adherence to what has become customary. See Newhall, Settlement of Estates (4th ed.) § 274. Permitting trustees to use flexibly all appropriate, convenient, and reasonable accounting methods is especially important in a day when the varying requirements of State and Federal tax and regulatory authorities and of probate accounting present serious bookkeeping problems and when accounting machinery offers opportunities for greater accuracy as well as for operating economies.

Taking this view of § 2, we see no impropriety in the method of accounting adopted by the trustees. We have no doubt that the method suggested by the guardian ad litem[4] would be a sufficient compliance with § 2. The method suggested by the guardian ad litem, perhaps, may be less accurate than the method employed by the trustees, for it leaves the book value of the original shares unreduced by any amount to reflect the dilution in value of the original shares caused by the issuing of rights.[5] Cf. the analogous situation presented by the amortization of the premiums on bonds purchased at a premium. *Old Colony Trust Co.* v. *Comstock*, 290 Mass. 377, 379–381; but cf. also *Boston Safe Deposit & Trust Co.* v. *Williams*, 290 Mass. 385. Both methods here discussed reach essentially the same practical result over a period of time, once the original shares are sold. On the trustees' method any gain realized on any later sale of the shares will be larger (than under the guardian ad litem's method) by an amount, equal to the proceeds of the

---

[4] We need not decide whether other methods, consistent with State or Federal tax requirements, would also be permissible. See Rabkin & Johnson, Federal Taxation, § 21.09; Barrett & Bailey, Income Taxes, §§ 288, 451–452.

[5] No practical reason exists for continuing to carry stocks at original appraised or cost value, if because of later transactions that value has been affected in a significant manner making appropriate reasonable adjustment of that book value. This is true even though, in the absence of such later transactions, the book value would have been continued unchanged. Appraised value is merely a somewhat artificial starting point for probate accounting. See Newhall, Settlement of Estates (4th ed.) § 274. See also 34th Report of the Judicial Council (Dec. 1958), Pub. Doc. No. 144, pp. 52–53.

rights, by which book value has been reduced, and any loss incurred will be smaller by the same amount. We can see no practical effect upon any beneficiary of the trust which makes one method of accounting for the transactions concerned materially preferable to the other. No benefit has accrued to the estate or to any beneficiary from the guardian ad litem's objection to the accounts on the grounds here discussed.

Other points argued by the guardian ad litem have been considered. They are without merit.

A decree allowing the accounts as rendered is to be entered in the Probate Court. Costs and expenses of the guardian ad litem on this report are to be allowed in the discretion of the Probate Court pursuant to G. L. c. 201, § 35. The compensation and expenses of the trustees in connection with the accounting and this report are properly the subject of their subsequent accounting.

*So ordered.*