## THE ATLANTIC FIRE AND MARINE INSURANCE COMPANY *v.* WILSON, GALL & CO.

An answer to a bill in equity, upon information and belief only, has no technical force as proof, but is regarded as a mere plea, or statement of defences.

Where an answer, to a bill seeking relief upon the ground of an agreement, merely denies the making of the agreement, the respondent cannot be permitted, from the proof, to insist, upon the supposition of the existence of the agreement, that it is avoided by the non-performance by the complainant of a condition contained in it; there being no defensive allegation in the answer taking that ground of defence.

A garnishee, who, upon an unauthorized presumption from circumstances, mistakenly supposes that the attorneys for the attaching creditor have waived his obligation to make affidavit before judgment, cannot be relieved in equity from the legal consequences of his mistake; since, it is the mistake of the vigilant only, in a case free from fraud, which will induce a court of equity to interfere with the ordinary course of proceedings at law.

Where a bill, filed by a garnishee for relief in such a case, puts the relief upon the ground of an explicit agreement made between him and the attaching creditor, through the attorneys of the latter, in violation or fraud of which they had refused to allow him to make affidavit as garnishee after judgment against the principal creditor, and were pursuing him at law as a garnishee who had *neglected* to make affidavit, the complainant cannot be allowed, upon failing to prove the agreement, to have relief upon the ground of mistake in supposing, from circumstances, that such an understanding existed between him and the attorneys of the respondent, nor upon the ground, that such mistake was induced by the conduct of such attorneys, in acting in the double capacity, of attorneys for the attaching creditor, and advisers of the garnishee.

BILL IN EQUITY to enjoin a suit at law commenced against the complainants as garnishees, for the amount of a loss, attached by the respondents, and to which their debtors, Wage & Scott, of Buffalo, were entitled, under a policy of fire insurance effected by them with the complainants.

It appeared, that the assured, Wage & Scott, being indebted to the respondents, were sued by them at the March term of the supreme court for the county of Providence, 1855, and that the writ was served by attaching, in the hands of the complainants, the amount of the loss due to Wage & Scott under the policy. No answer was put in to this suit, and it was continued, under the statute, to the March term of the court, 1856, when judgment was obtained by default. The complainants had filed no affidavit as garnishees, and refusing to pay the judgment against Wage & Scott, the suit, to enjoin which this bill was filed, was brought against them as garnishees, by the

respondents, at the September term of the supreme court for the county of Providence, 1856. It further appeared, that Wage & Scott having, subsequent to the loss, and, as was claimed, prior to the above attachment of the amount of it by the respondents, assigned the policy, for value, to one Austin Barnum, Barnum, as assignee, commenced a suit against the complainants, in the courts of New York, upon the policy, and notwithstanding their defences, recovered of them there the loss due upon it. The bill, which was sworn to by Stevens, the secretary of the complainant company, alleged, as one ground of the relief prayed, that, pending the attachment suit here and before judgment in it by default, the respondents, through their attorneys in that suit, Messrs, C. & W. Updike, stipulated and agreed with the complainants, that the attachment suit here, in which they were served as garnishees, should be continued to await the event of the suit of Barnum against the complainants in New York, and that they should not be held liable on the attachment, nor be required to make any affidavit, in the event of recovery by Barnum in New York; that, upon the faith of this stipulation with the attorneys of the complainants, which they were advised by counsel was valid and binding, they did not answer, or file any affidavit as garnishees in the suit here, but contested, unsuccessfully, Barnum's suit upon the policy in New York; that, immediately upon ascertaining that a verdict had been rendered against them in the latter suit, they gave notice of it to the attorneys of the respondents, and requested them to withdraw the attachment and discharge them from all liability under it, according to the above agreement, or to permit the complainants to file an affidavit as garnishees; but the attorneys of the respondents, although the court was then in session at which they had obtained the judgment by default, in violation of their agreement, refused these requests of the complainants, and informed them, that they should be held responsible for the amount of such judgment, by reason of their not having answered or made affidavit in the suit; and accordingly, at the September term of the supreme court for the county of Providence, 1856, sued them for the amount of the judgment against Wage & Scott, as garnishees who had neglected to make affidavit in that suit.

Another ground for relief, stated in the bill, was, that the respondents, upon the same claim against Wage & Scott, upon which they were pursuing the complainants, had garnisheed, in the courts of Connecticut, the Bridgeport Fire and Marine Insurance Company, for a loss upon a policy effected by Wage & Scott with that company upon the same property insured by the complainants, and, as the complainants were informed and believed, such proceedings were had in that suit that the Bridgeport Fire and Marine Insurance Company had paid to the respondents $603.45, which sum was not allowed or credited to Wage & Scott when judgment was entered up against them by default, in the suit in which the complainants were garnisheed.

The answers of the defendants denied, upon information and belief, that any such agreement was made with their attorneys, respecting the attachment suit here, as set up in the bill, or was relied upon by the complainants; but admitted, that they had received of the Bridgeport Fire and Marine Insurance Company, upon trustee process, the sum of $603.45, upon the same claim upon which they were pursuing the complainants; and averred, as a reason why they had not credited that amount in the judgment obtained here, to be, that before receiving that sum from the Bridgeport Fire and Marine Insurance Company, they were required by that company to give to them a bond of indemnity, intended, as that company now alleges, to secure them against any suits which might be brought against them by Austin Barnum as assignee of the policy of Wage & Scott effected with said company; that judgment was obtained by said Barnum against said company upon the said last-named policy for a greater sum than that paid over by said company to the respondents, and that said company then sued the respondents upon their said bond of indemnity, which suit is now pending against them in the courts of New York.

Replication being filed, the case went to proof; and Benjamin Stevens, the secretary of the complainant company, deposed, that it was explicitly agreed between him and the attorneys of the respondents, that the attachment suit here should wait the event of the suit of Barnum against the company in New York,—that if the complainants would contest Barnum's

suit they should not be required to file any affidavit as gar-
nishees here, until the termination of the suit there; that he
had no recollection that it was agreed that if the company con-
tested the claim in New York they were not to be liable in the
suit here, but that it was agreed that when the suit in Buffalo,
New York, was terminated, and the amount due upon the
policy agreed on between Wage & Scott and the company, he,
as secretary, should go into court and state what funds belong-
ing to Wage & Scott were in the hands of the company at the
time of the service of the writ, and the respondents were to take
judgment accordingly. He further deposed, that in consequence
of this agreement the suit here was not answered, nor any affi-
davit filed in it, by the complainants, and that, upon the unsuc-
cessful termination of the suit in New York, the attorneys of
the respondents refused to permit him to make such affidavit.
He also swore that he did not consult any other counsel than
the attorneys of the complainants; they agreeing to give him
all the information which he wanted in the matter, and to save
the expense to the complainants of employing an attorney here.

On the other hand, it was explicitly denied by the Updikes
in their depositions, that they made any such agreement or had
any such understanding as that stated by Stevens in the bill
or in his deposition, or that they had been consulted by Ste-
vens in any way as counsel for the complainants, or had acted
for him, except to procure, at his expense, a certified copy of
the proceedings in the attachment suit here, for the purpose of
defence in the suit upon the policy instituted against the com-
plainants in New York. Appended to the deposition of Cæsar
Updike, who, it appeared, had the sole management of the
attachment suit here, was the correspondence between him, in
the name of his firm, with the respondents, produced at the
request of the complainants.

It appeared from a letter, in the course of this correspon-
dence, written by the respondents to their attorneys, the Messrs.
Updike, under date of December 24, 1855, that the former
had received before that date, " the money due by the Bridge-
port Insurance Company; having obtained a judgment in due
course." The judgment by default, in the attachment suit,

was obtained here in the April following, without deduction on that account.

*T. A. Jenckes*, for complainants : —

1st. The complainant company is entitled to the relief prayed for, on the ground, that a court of equity has full power to, and will, relieve against mistake. See, generally, as to the power, and the mode and the cases in which it is exercised, Adams's Eq. 188, et seq. (side page) ; 1 Story's Eq. Jur. § 147, et seq.; and as to the power to restrain by injunction, as prayed for in the present case, the execution of a judgment, Adams's Eq. 197 ; 2 Story's Eq. Jur. §§ 885, 886, 887, et seq.

2d. The money having been paid on the judgment obtained against the company in Buffalo, under the belief, as shown by the evidence, that the attorneys for the respondents had agreed to wait the result of that suit before proceeding further, the complainant company is entitled to the relief prayed for.

3d. The company having been guilty of no laches or negligence, and the evidence clearly showing that they had good ground for believing that the agreement to stay proceedings and to withdraw the attachment, should the Buffalo suit terminate unfavorably, had been made by the attorneys of Wilson, Gall & Co., though that belief was mistaken, yet the mistake being made, and acted on in good faith by the company, the court should grant the relief prayed for.

4th. The amount of the judgment taken by Wilson, Gall & Co. through their attorneys in their suit against Wage & Scott, in which the complainant company was served with process as garnishees, was greater than the amount due to them ; part of their claim having been paid. That judgment is, therefore, absolutely void, and all proceedings arising from it, or founded upon it, are also void.

The debts and costs amounted to about $850. The damages laid in the writ, a copy of which was served on the company as garnishees, was $800. Judgment was taken to the full amount of the damages laid in the writ.

*Payne*, for the respondents : —

1st. The main ground for relief set up in the bill, to wit, the agreement between Stevens, as secretary of the complain-

ant company, and the Messrs. Updikes, the attorneys for the respondents, is not sustained by the proof; and the complainant cannot, at the hearing, deserting, as he has done, that, insist, upon the proof, upon any other ground, for which the allegations of the bill afford no foundation.

2d. But if that agreement were proved, it was conditional upon the complainants' contesting the suit in New York; and it appears from the proof, that although they had proof that the assignment to Barnum was fraudulent and void, no such defence was taken in that suit.

3d. As to the amount upon the claim sued here, received from the Bridgeport Insurance Company, upon a bond of indemnity given by the complainants, upon which a suit is now pending, he would assent, for the respondents, to any stipulation which the court might suggest to secure to the complainants the benefit which the respondents might, upon the conclusion of that suit, reap from the payment; but insisted, that the main ground for relief failing, the respondents were entitled to their costs.

AMES, C. J. The main ground laid in the bill, upon which we are asked to enjoin the respondents from prosecuting their suit at law against the complainants as garnishees, is, that the complainants were prevented from answering or making affidavit in the suit in which they were served, by the confidence which they reposed in a positive agreement entered into between them and the attorneys of the respondent, in violation or fraud of which a judgment was obtained in that suit. We are not satisfied, by the proof, that any such agreement, or any agreement, was made by the attorneys of the respondent with the complainants. The testimony of Stevens, the secretary of the complainant company, is fully met and explicitly contradicted by the testimony of Cæsar Updike; and the contemporary correspondence between him, on the part of his firm, with his clients, appended to his deposition, at the call of the complainants, strongly corroborates his testimony. It shows, at least, that if he entered into any such arrangement as that pretended by the bill, he did so contrary to the directions of his clients, and to his own assurances to them. The burthen of proof is

upon the complainants; and upon a mere balance of testimony they must of course fail. In weighing the evidence upon this point, we have altogether excluded the answer from our consideration; since it responds to this matter only upon information and belief.

The other ground of defence, that, admitting the agreement to be proved, the complainants cannot avail themselves of it, because the proof shows that they have not, by properly contesting the suit in New York, performed the condition annexed to the agreement, the answer does not permit us to consider. It contents itself with a denial of the making of any such agreement, and contains no averment, by way of defensive allegation, avoiding it on account of the non-performance of any condition proved or supposed to form a part of it.

But it has been argued on the part of the complainants, that admitting there is not sufficient evidence to warrant relief upon the ground of the agreement set up in the bill, yet, it is evident from the proof, that the complainants acted, or, rather, neglected to act, upon a mistake that there was such an understanding between them and the attorneys of the respondents, and that, too, induced by the conduct of the attorneys, and by their acting as the advisers of the complainants, as to the suits then pending against the complainants here and in New York. We are not satisfied, from the proof, that the complainants, or their secretary and agent, had any just ground for believing that the respondents, through their attorneys, had waived the filing of an affidavit by the complainants, as garnishees, at the time required by law; and the neglect to perform so obvious a duty, upon an unauthorized presumption, from circumstances, to that effect, does not constitute such a mistake as is relievable in a court of equity. It is the mistake of the vigilant only, in a case free from fraud, which will induce the court to interfere with the ordinary course of proceedings at law. Still less are we satisfied from the proof, that the attorneys of the respondents, by acting for, or as the advisers of the complainants, intentionally induced them to trust that their interests, as garnishees, would, without answer or affidavit, be safe, in the suit, in which these attorneys were placed in an adversary position to them.

41 *

On the contrary, according to the testimony of Cæsar Updike, notice was early given by him to Stevens, the secretary of the complainant company, that whatever might be the result of the suit in New York, they should insist upon their attachment. At one time, he swears, that he asked Stevens if he had answered, or made affidavit in the garnishee suit here; and receiving answer that he had not, and did not intend to make any, replied, " It makes no difference to us ; we shall get our money if you do make an affidavit, and we shall get it if you don't." Taken in its connection, this is rather the language of threatening assurance than of advice ; and considering that it was used at a time when the complainants might have answered the suit, and long before it was necessary for them to file their affidavit, as garnishees, was calculated, one would think, to put them upon their guard, and to lead them to seek counsel elsewhere for the protection of their interests. The fact, that Updike, at the request of Stevens, and at the expense of the complainants, and to save Stevens the trouble of going to the clerk's office, procured a copy of the proceedings in the garnishee suit here for the use of the complainants in the suit in New York, and left it at their office, is not sufficient to warrant us in believing, contrary to his explicit and detailed statements to the complainants, expressing or implying the precise contrary, that he acted in the suit here, or was believed by Stevens to act as *his* adviser in regard to it. Indeed, there is a discrepancy, in this respect, between the bill, which is sworn to by Stevens, and his deposition, given at a later date, which indicates some confusion of memory, to say the least of it, on his part. In the bill, it is alleged, that " they (the orators) advised with their counsel in the city of Providence, concerning the propriety of the arrangement made with the attorneys of Wilson, Gall & Co., and were assured that the same was a fair, legal, and valid arrangement, and that, if carried out in good faith, your orators would be under no necessity of answering, or in any way defending or contesting the suit of said Wilson, Gall & Co. against said Wage & Scott, or of filing any affidavit therein setting forth the amount of funds in their hands; and in consequence of said agreement, *and such advice* thereon,

your orators gave no instructions to have said case answered or contested, and filed no affidavit as garnishees in said suit, but instructed and urged their counsel and agent in said city of Buffalo, to have the suit of said Barnum against your orators brought on for trial as soon as possible, in order that your orators might ascertain their liabilities, or save themselves therefrom, by settling with the person authorized to discharge the same."

Now it is quite evident, upon any fair construction of this clause of the bill, that it carries the idea that the complainants consulted *their* counsel in the city of Providence concerning the alleged arrangement, in contradistinction from the attorneys of Wilson, Gall & Co.; "their counsel in the city of Providence" being put, in the sentence, in opposition to "the attorneys of Wilson, Gall & Co.;" and the consultation being as to the propriety of an arrangement theretofore made with those attorneys; a singular consultation to be had, if "their counsel" and "the attorneys of Wilson, Gall & Co." were the same persons; since the latter had already, according to the statement, decided upon the propriety of the arrangement, by entering into it; and altogether singular counsel to take, in order to be assured, as it were, by additional and safe advice, as to the propriety and validity of the arrangement already made with them. Yet Stevens, when asked in the 30th direct interrogatory in his deposition, "State whether or not said company consulted counsel in Providence as to the validity and legality of said agreement;" referring to this very arrangement, as it is styled in the bill, replies: "I did not consult any other counsel than the Updikes, they agreeing to give me all the information I wanted in the matter, and to save the expense of our employing an attorney;" and again, in answer to the 47th direct interrogatory,—which is the general and closing one,—reiterates the same thing, in the same and in another connection.

Now if we ought ever to rely upon the testimony of one witness, in a case so circumstanced that the answer weighs nothing, when that witness is expressly contradicted by another against whom nothing else appears, yet we cannot weigh down, with the testimony of a witness who thus apparently contradicts

himself, the testimony of both the Updikes; one of whom swears, that he had nothing to do with the matter but to fill out the writ of attachment at the request of his brother, and knows nothing else about it; and the other of whom, who managed this business, as both swear, exclusively, explicitly denies, and with great detail of what he did say and do, the statements, in this and other respects of the witness.

But if we gave ever so great credence in these particulars to the testimony of Stevens, how could we relieve in this case, upon the ground of mistake only, or upon mistake, induced in the complainants by the attorneys of the respondents, acting, in the garnishee suit, also as the advisers of the complainants. The bill alleges no such mistake; and above all, sets out no such peculiar practices or inducements of the attorneys of the respondents in that suit, and describes them as acting in no such double capacity. It pretends, as a ground for relief, no such delicate or complex equities. On the contrary, it places its whole title to the interposition of the court, upon the plain ground of a positive agreement entered into between the complainants and the attorneys of the respondents, acting as such in the conduct of a suit adversary to the interests of the complainants, concerning which, so far from relying upon these attorneys, it alleges, as we have seen, that the complainants consulted their own counsel, both as to its propriety and legality. We should contradict, in the most flagrant manner, the just principle of equity practice which requires, for the purposes both of answer and proof, a fair conformity between the "allegata" and the "probata," upon a bill for relief, if we should allow the complainants, because their proof fails them upon the ground alleged, to obtain relief upon any other ground, and especially upon any ground inconsistent with that.

This bill must be dismissed with costs; but it can only be, upon the respondents' entering into such a stipulation in their suit at law, here pending against the complainants as garnishees, as will assure to the latter, in that suit, the benefit which the respondents shall receive from the sum of $603.45, paid to them upon their claim by the Bridgeport Fire and Marine Insurance Company under a bond of indemnity, upon

which bond a suit is now pending against the respondents in one of the courts of New York. Such a stipulation was voluntarily offered by the counsel for the respondents at the hearing, and can be made, by the shape of the decree, the condition of our dismissal of this suit.