JOHN MILLER, *Building Inspector, vs.*
SCHEINDEL TANENBAUM.

JUNE 22, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

PER CURIAM. This is a suit in equity, brought in behalf of the city of Warwick by its building inspector, to enjoin the respondent, the owner and occupant of a certain parcel of land with buildings thereon in that city, from using a part of the land as a lumber yard in alleged violation of the zoning ordinance, and to compel the removal from such lumber yard of all the lumber piled thereon.

The main facts of the case are not seriously in dispute. The ordinance was enacted on April 17, 1930, and by it these premises were classified as being in a business F district. When the classification became effective, the respondent was the owner and occupant of the premises and carried on there the business of the sale, with incidental storage, of hay, grain, feed, coal in small quantities, hardware, laths, moulding, material for roofing, and other building materials, drain pipes and various other items of a generally similar character, but apparently no lumber as here in question. This business was almost entirely carried on inside the buildings.

The justice of the superior court before whom the case was heard, on the complainant's prayer for a preliminary injunction, found from the evidence that, until some time in July

or August, 1937, the part of the premises that was outside of the buildings was not used for the storage of lumber at all and was not used for the storage of other materials except only very sporadically and occasionally; but that since that time it had been used for the storage of lumber in considerable quantities; and that this use was such as to constitute a use of that part of the premises as a lumber yard.

At the close of that hearing the justice made a decision in which he found, besides the facts above stated, that use for a lumber yard is not one of the uses permitted in a business F district; and that such use was not permissible under sec. 8 of the ordinance, relating to nonconforming uses, as being for a purpose "not substantially different" from a use or uses made of the premises at the time when the ordinance went into effect. He thereupon granted the complainant's prayer that the respondent be temporarily enjoined from using the premises as a lumber yard and also granted a mandatory injunction, ordering the respondent to remove the lumber from the premises by a certain time.

On October 14, 1937, a decree was entered in the superior court that, until further order of the court, the respondent be enjoined from using the premises as a lumber yard and that, within one week from October 15, 1937, she must remove from the premises all lumber placed thereon either to an industrial zone in the city of Warwick or to some place outside of that city. The respondent appealed to this court from that decree on the grounds that it was contrary to the law, that it was contrary to the evidence, and that the mandatory injunction therein was contrary to the law. As a result of a motion filed in this court after the appeal had been taken, the operation of the portion of the decree which ordered the respondent to remove the lumber from the premises by a certain time was suspended until the determination of the appeal.

The respondent denies that the use of the premises is in violation of the ordinance. Neither party agreed to submit

the case for final decision upon the evidence as presented, but both parties indicated that further evidence would be adduced at the final hearing upon the merits.

The question before us, on the respondent's appeal from the decree granting a preliminary injunction, is merely whether it is reasonably clear that the justice in granting the preliminary injunction exercised his discretion in an illegal manner. The granting of such an injunction does not amount to a formal or final determination of the rights of the parties; its office is merely to hold matters approximately in *statu quo,* until the cause may be properly and finally heard and determined upon its merits; and, to prevent, in the meantime, the doing of any act whereby the rights in question may be irreparably injured or endangered. Its issuance rests largely in the sound discretion of the court. *Armour* v. *Hall,* 38 R. I. 300; *Blackstone Hall Co.* v. *Rhode Island Hospital Trust Co.,* 39 R. I. 69.

Upon the evidence and on the questions of law, as they were presented to the justice at the hearing upon the prayer for a preliminary injunction, we cannot say that he exercised his discretion in an illegal manner. From our examination of the evidence it appears that the complainant made out a *prima facie* case sufficient to warrant the granting of a preliminary injunction. We are of the opinion that there was no abuse of the sound discretion vested in the court upon such a hearing and, therefore, no error in the granting of a preliminary injunction.

However, we find upon the evidence that the granting of the mandatory injunction, under the circumstances and to the extent ordered, was not required to adequately protect the rights of both parties until the merits of the cause could be finally heard; and that the justice, therefore, in granting *pendente lite* such mandatory relief, abused the sound discretion vested in the court. It is also our opinion that the negative part of the decree should be so modified that the respondent would, *pendente lite,* be allowed to sell the re-

maining lumber on the premises in the regular course of business, but not to replace any of it with other lumber.

The respondent's appeal is sustained in part and denied in part. On July 5, 1938, the parties may present to us a form of decree, in accordance with this opinion, for entry in the superior court.

*Edward L. Godfrey,* for complainant.

*Bellin, Levin & Alprin,* for respondent.