INDUSTRIAL TRUST COMPANY, *Ex. vs.* ANNIE P. DEAN *et al.*
SAME *vs.* SAME.

APRIL 6, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. These probate appeals were taken by the executor of the will of John M. Dean from two decrees of the probate court of the city of Cranston. Both decrees were entered in that court on the same day, February 15, 1941, after a single hearing. One disallowed the executor's first and final account; the other was a refusal of the executor's resignation. The appeals were also heard at a single hearing by a justice of the superior court sitting without a jury, who sustained both decrees. The executor, who will be hereinafter referred to as the appellant, duly excepted to those decisions and the cases are here on such exceptions.

John M. Dean died on May 5, 1938 leaving a will in which he named the appellant as his executor. On June 13, 1938 appellant qualified as such executor. At that time it held testator's note in the amount of $20,832.92, dated November 2, 1934, which had been overdue since February 4, 1935. Appellant also held on that date as collateral security for this note 78 shares of the stock of the National Ring Traveler Company and 100 shares of the stock of the Providence Washington Insurance Company.

On the dates hereinafter stated the appellant, in its capacity as executor of the will of John M. Dean, filed the following papers in the probate court: August 4, 1938, inventory of the testator's estate, including the above-named stock; December 20, 1938, its claim against testator's estate for $99,285.61 in which sum was included testator's overdue note of November 2, 1934, which claim was never allowed; April 14, 1939, its first and final account and also its resignation as executor.

On October 7, 1938, without obtaining permission from the probate court, appellant sold the Providence Washington Insurance Company stock for $3194.67, and in like manner on January 4, 1939, the National Ring Traveler Company stock for $12,870. Appellant credited testator's estate with each amount in its first and final account in part payment of testator's overdue note.

It was on this record that the probate court disallowed ap-

pellant's first and final account and refused to accept its resignation as executor. In addition to this record the justice of the superior court had before him testimony of appellant's trust officer to the effect that appellant's trust department was separate and distinct from its loan department and, more particularly, that such trust department at no time had possession of testator's note and the collateral security therefor. Each court, nevertheless, reached the same conclusions on the record before it.

The justice of the superior court incorporated his decisions in a rescript in which he also stated the reasons for such decisions. He held that the appellant's interest as pledgee of the collateral security was adverse to its interest and duty as executor and that such conflict of interests impaired its authority to freely sell testator's personal property in its possession under the pledge agreement while acting at the same time as executor. He also held that the appellant could not satisfy in part the claim which it had filed in the probate court before such claim had been allowed by the probate court in accordance with the statute regulating proof of claims against estates of deceased persons. General laws 1938, chapter 578, § 10. He held further that until appellant settled its accounts with the probate court appellant could not resign, by virtue of G. L. 1938, chap. 575, § 12.

Appellant contends that a creditor, holding collateral security under a valid pledge, may exercise all his powers as pledgee, including the power of sale, despite the death of the pledgor and the creditor's subsequent appointment as executor of the pledgor's estate. In support of this general proposition it argues that there is no question that the death of a pledgor does not revoke the power of sale under a pledge of collateral security, or that a creditor in this state is a proper person to administer a decedent's estate. G. L. 1938, chap. 578, § § 3, 10. Appellees do not controvert either of these contentions.

The controversy arises almost wholly over appellant's main contention, which is substantially that the fiduciary re-

lationship of an executor to the estate of his deceased debtor does not in and of itself absolutely exclude the exercise by the executor, in his own interest, of the power of sale under a valid pledge of collateral security made by the debtor in his lifetime. In other words, appellant claims that under certain circumstances the law has made an exception to the general rule that a fiduciary's duty is superior to his personal interest where a conflict arises between such duty and interest. That exception, appellant claims, arises where it is clear in a given instance that the fiduciary's conduct in protecting his own interest has not resulted in harm to the interest of his beneficiary.

In support of this view appellant cites the case of *White* v. *Kinniburgh,* 57 R. I. 117, and numerous cases from other jurisdictions, as well as 2 Scott on Trusts, § 170.9. We need not stop to discuss any of those authorities except the *White* case. We have read them and though it would appear that on the facts of each case the principle contended for by the appellant here was applied, it does not seem to us that the facts in any of those cases can reasonably be said to be similar to those of the instant case.

*White* v. *Kinniburgh, supra,* was not a case where the same person was both executor and pledgee creditor. It involved a trustee and the creators of the trust who were living and beneficiaries thereunder. There were also special circumstances, not present in the case at bar, that persuaded this court to allow such trustee to charge his beneficiaries interest, but only at the legal rate, for the use of money which he had advanced out of his own funds for their benefit and which seemed to have been contemplated by the beneficiaries in their trust deed and relations with the trustee. All of the substantial facts upon which the court relied are carefully set out at some length in the opinion in that case, and we think a comparison with the facts of the instant case will disclose a great lack of similarity.

After carefully considering the fundamental principle which is involved here and the nature and extent of the ex-

ception which the courts have made thereto in applying the principle to special situations, we are of the opinion that the appellant does not come within such an exception. On the contrary, its case appears to be clearly ruled by *Horton* v. *Maine,* 22 R. I. 126. In that case a guardian sold his ward's stock of goods in the exercise of a power of sale contained in a mortgage made by the ward, before his guardianship, to the guardian. There this court held that the duty of the guardian and the interest of the mortgagee with power to sell were clearly adverse. It was the duty of the guardian, the court said, to see that such power was fairly exercised in the ward's interest and that to permit its exercise by the guardian for his own interest would be liable to result in depriving the ward's estate of the very protection which the guardianship was designed to afford. And the court, at page 127 of the opinion, thus concluded: "Such a liability the law will not tolerate, and therefore it does not permit the same person to occupy two antagonistic relations from which a possible conflict of duty may arise, and will not stop to consider whether or not a sale in such circumstances in a particular instance is fair or otherwise."

That statement appears to fit the instant case. Appellant's duty as executor is plainly adverse to its interest as pledgee. That interest must be subordinated by appellant to its duty as a fiduciary. And that duty must be performed by one acting in the capacity of executor in compliance with the statutes governing the powers and duties of executors. If, as here, those duties necessarily deprive appellant of the right of power of sale which it otherwise had over its testator's property in its possession as a pledge, such deprivation is the result of appellant's free choice.

Appellant was not obliged to accept appointment as executor of the will of its debtor and pledgor. It could have declined such appointment and retained its freedom of action over the pledged property in its possession without recourse to the probate court. It elected not to do so but qualified as executor and duly inventoried the pledged securities of the

testator as assets of his estate, which was its duty. However, it seeks to claim now that, as executor, it never had possession of the pledged property but that such property was in the exclusive possession of its loan department which it asserts is separate and distinct from its trust department; and that such latter department alone is charged with performing its executorship duties. A claim of this kind is clearly lacking in merit. Appellant is one artificial person in the eyes of the law, not two; and we must treat it, in the circumstances here, as we would a natural person.

We are accordingly of the opinion that on the record before it, the probate court was justified in disallowing appellant's first and final account and in refusing its resignation as executor; and hence that the justice of the superior court did not err in sustaining the decrees appealed from.

Appellant's exceptions are overruled and each case is remitted to the superior court for further proceedings.

Moss, J., dissenting.  I am unable to agree with the final conclusion reached in the foregoing opinion or with the grounds upon which it is based.

In that opinion it is stated that the appellant's case "appears to be clearly ruled by *Horton* v. *Maine, 22* R. I. 126." But to my mind that case, on its facts, is clearly distinguishable from the instant one. There Maine, while he was mortgagee of a stock of goods belonging to Horton, had been appointed guardian of the person and estate of the latter, *against the latter's opposition* and on the ground that the latter was incompetent to manage his own affairs. Soon afterwards Maine had, in the exercise of the power of sale in the mortgage, sold the goods; and he had also, at the sale, bought them through a third person for his own personal benefit.

In the instant case, however, John M. Dean had not only made to the trust company a pledge, with a power of sale, of the shares of corporate stock involved in the accounting in this case, to secure the payment of such indebtedness as he might owe to the trust company; but he had also, in the will

which took effect after his death, named that company to be the executor and the trustee thereunder and had therein given it as such executor very broad powers, including the power, "in its discretion, to sell, mortgage and pledge such and so much of my estate, real or personal, as it may deem necessary . . . ."

Moreover, the trust company, in making the sales of shares of corporate stock that are involved in this accounting, did not buy them in, directly or through a third person, but sold them to outsiders; and there is no evidence to indicate, nor is it contended by any party in this case, that these shares were not sold for the highest price obtainable and for at least as much as the market price. Indeed, the trial justice, in his rescript, found that the stock of one of the two corporations had been sold "at the market" and that the trust company had "used all reasonable care and diligence in the sale" of the other stock and that the price obtained was fair and reasonable.

It was shown by undisputed evidence at the trial of this case in the superior court that, at the times when these sales were made by the trust company as pledgee, there was held by it an unpaid and long overdue promissory note which had been made by John M. Dean to the trust company and as security for the payment of which it held the above-mentioned shares of stock, pledged by him to it; that, at the times of these sales, there was payable to the trust company on that note a sum which considerably exceeded the total amount received by the trust company from these sales; and that this amount was credited by it on this note.

By reason of the facts of this case I am convinced that it differs radically from *Horton* v. *Maine, supra,* and that the rule of law therein laid down and applied should not be applied in this case. On the contrary, I am convinced that on the question of the right and power of the trust company to make these sales and to apply the proceeds from them in part payment of the note held by it, the same reasoning should

be applied and the same results reached as are set forth in the opinion in *Purman's Estate,* 334 Pa. St. 238.

In that case the Union Trust Company, at the death of Purman, the testator, was the holder and owner of a judgment note made and delivered to it by his son-in-law; and as collateral security for the payment thereof it held, under a pledge by the testator, two negotiable bonds owned by him. In accordance with his will, it was appointed as the executor thereof and it duly qualified and acted as such. Its first and final account was contested by his widow.

The trust company, while it was executor, had as pledgee sold the above-mentioned bonds in accordance with the pledge, the note being in default; and it applied the proceeds of their sale to the payment of the note. In its account as executor it charged itself with the amount received at the sale and credited itself with the same amount, as having been paid upon the obligation secured by the testator's pledge.

The court overruled the widow's contentions against the allowance of the account and at page 245, after stating the conduct of the trust company in selling the bonds and accounting as executor for the amount received, said: "Being in possession of the pledged bonds, the Trust Company exercised its right to sell them and apply the proceeds to the obligation they secured. . . . Hence the pledgee was entitled to satisfy its claim by foreclosing on the pledged bonds and the executor properly credited itself for this amount."

In the instant case I see nothing invalid, improper or inconsistent in the conduct of the Industrial Trust Company with regard to the sale of the securities and the application of the proceeds and in continuing to serve as executor of the will. In view of the fact that it proved *in this case* the validity of the *note* and the sum payable to it thereon, I cannot see that the fact that it had not proved, by the statutory method, the validity and amount of its *general claim* against the estate should prevent it from having its account as executor allowed and its resignation as executor accepted.

Nor do I find anything improper in its method of treating,

in its account as executor, the sums received from the sales of the pledged securities, which seems to me the same method as was employed by the executor and approved by the court in *Purman's Estate, supra.*

I see no objection to the conduct of the trust company in including in its inventory as executor the pledged shares of stock as a part of the estate. The legal title to them was in the testator at the time of his death and they stood in his name on the books of the respective corporations. The certificates therefor were in the possession of the trust company at that time and continued to be in its possession after his death and when the shares were inventoried and appraised; and I cannot see what difference it could make, in the matter of the inventory and appraisal, whether the certificates were in one department or another of the single corporation.

It seems clear to me that since the trust company, as pledgee, sold one of the blocks of shares for an amount greater than its appraisal value, it, as executor, properly included in its account, as assets received, the difference between the two amounts. It also seems clear to me that the executor properly received the dividends paid on one of the blocks of shares, since those shares formed a part of the estate, the legal title being in the testator at his death.

Granting that the burden was on the trust company to prove, by convincing evidence, that, as to the matter of the pledged securities and the proceeds of their sale, it had not used for its personal benefit its office or any of its powers as executor, or done anything as a creditor-pledgee which it was not clearly authorized and entitled to do, I find that it has made such proof and that there was no evidence to the contrary.

Since there was no objection to the allowance of the account except on the ground of the way in which the executor dealt with these securities and the proceeds of the sales thereof, and as there was no reason given by the trial justice or the appellees for denying the petition of the executor for

leave to resign except that its account was not approved, I am of the opinion that the appellant's exceptions should be sustained.

*Huddy & Moulton, Stanley H. Smith, Jr., Bruce M. Docherty,* for appellant.

*Voigt, Wright & Clason, Ernst T. Voigt, Walter P. Suesman,* for appellees.