JOSEPH SAMUELS SINCLAIR *et al. vs.* INDUSTRIAL NATIONAL BANK OF PROVIDENCE *et al.*

JULY 21, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

462

FROST, J. This is an appeal by the respondents from an interlocutory decree entered in the superior court following a hearing on the complainants' prayer for a preliminary injunction wherein the trial justice restrained the respondents until further order of the court from selling to Roger L. Stevens, of the city and state of New York, or his assignees certain shares of The Outlet Company stock pursuant to an agreement dated November 10, 1958.

The bill was originally brought by Joseph Samuels Sinclair, and later his mother Bertha Samuels Sinclair, now deceased, on her own motion was made a party complainant. The amended bill of complaint was brought against the Industrial National Bank of Providence, Walter F. Farrell and Daniel H. Morrissey, all trustees under an indenture of Joseph Samuels dated December 28, 1934, and against the Industrial National Bank, Walter F. Farrell,

Daniel H. Morrissey and James Sinclair, trustees under clause Eleventh of the will of Joseph Samuels, and against the Industrial National Bank of Providence as escrow agent pursuant to a contract entered into on or about November 10, 1958 between said trustees and Roger L. Stevens. Hereafter the Industrial National Bank of Providence will be called the bank.

The amended bill avers among other things that the complainant Joseph Samuels Sinclair is the contingent beneficiary of the said two trusts; that Joseph Samuels died on February 13, 1939; that Bertha S. Sinclair is the income beneficiary of both trusts; and that upon her death, provided complainant Joseph Samuels Sinclair is then living and is then forty years of age or more, the principal of both trusts is to be paid to him, free and clear of all trusts.

It is also averred that the bank, Farrell and Morrissey have been trustees of both trusts since the death of Joseph Samuels; that the bulk of the principal of the trust under the indenture consists of approximately 31,225 shares of The Outlet Company stock, and the bulk of the principal of the trust under clause Eleventh of the will consists of 1,955 shares, more or less, of The Outlet Company stock; that The Outlet Company, a Rhode Island corporation located in Providence, is engaged in the retail merchandising business and owns and operates a radio and television station; that the bank, Farrell, and Morrissey are also trustees of three other trusts holding 22,050 shares, more or less, of the stock of The Outlet Company; and that the shares in all of said trusts, which total 55,230, constitute a majority of the stock of the company and represent a controlling interest in the company, there being, upon information and belief, 99,240 shares of the company outstanding.

It is further averred that the trustees entered into a contract with Stevens whereby he was given an option to purchase all the stock in all of the said trusts at a price of $120 per share; that the option was exercised; that Stevens

will tender offers to other shareholders to purchase their stock for $120 per share; and that the contract with Stevens provides that the trustees shall have the right under certain conditions to accept offers of other buyers who are willing to pay more than $120 per share for such stock.

It is also averred that the stock is listed on the New York Stock Exchange; that on December 1, 1958 the closing price was $112; and that it is the intention of the trustees to invest the major portion of the proceeds of the sale of the stock of the Joseph Samuels trusts in tax-exempt securities.

It is averred further upon information and belief that two major factors in the decision of the trustees to sell The Outlet Company stock were the desire of Farrell and Morrissey to withdraw from the management of a demanding commercial enterprise and the reluctance of the bank to continue to hold the stock without their continued participation in the active management of The Outlet Company, and that a further major factor was the desire to sell the stock held in certain other trusts referred to as the Quinn and Leon Samuels trusts, which stock could not so advantageously be sold as a separate unit.

The complainants allege that the sale by the trustees of The Outlet Company stock held by the two Joseph Samuels trusts is an act of negligence on the part of the trustees and they give the following as reasons therefor:

"(a) that the principal of the said trusts will be substantially reduced by sale of the stock since the federal tax resulting therefrom will amount to $800,000, a sum which may not be recovered through appreciation since the trustees intend to invest the proceeds in tax-exempt securities.

"(b) that the sale of The Outlet Company stock would diminish the principal by $800,000 thus reducing the potential share of complainant Joseph Samuels Sinclair and will not substantially assist the present income beneficiary.

"(c)   that the sale of stock control in The Outlet Company should yield a price greater than $120 per share.

"(d)   that the trustees, despite the provisions of said option agreement, refused to negotiate with or to receive offers from third persons during the period from November 10 to December 1, 1958, who were prepared to offer a higher price for the stock than that offered by Stevens and were also prepared to protect the managerial status of complainant Joseph Samuels Sinclair.

"(e)   that the trustees in making said sale preferred the interest of the beneficiary of the Quinn trusts, the interest of the life tenant of the Samuels trusts and the interest of the outside shareholders of The Outlet Company, all at the expense of complainant Joseph Samuels Sinclair.

"(f)   that the trustees prior to signing the said contract with Stevens never informed complainant Joseph Samuels Sinclair of the proposed sale and never offered him an opportunity to buy the stock or to form a syndicate to do so.

"(g)   that the trustees failed in their said contract with Stevens to provide the customary provision for the employment security of Joseph Samuels Sinclair in the general managership of the radio and television station.

"(h)   that the trustees failed to use adequate care and reasonable diligence in ascertaining the value of The Outlet Company stock held by the so-called Samuels trusts."

The complainants further allege that the sale by the trustees of the stock held by the Joseph Samuels trusts would be an act contrary to the intention of the settlor or testator in that the principal of the trusts would be reduced by the sum of $800,000, since the settlor or testator in the trust instructions requires that the principal be preserved as shown by the instructions therein.

The complainants further allege that to permit the sale by the trustees of the Joseph Samuels stock in The Outlet Company would wrongfully deprive complainant Joseph

Samuels Sinclair of his inheritance of the major block of stock of the family business since he could quite probably inherit said stock within three and one-half years; that it was the intention of Joseph Samuels as repeatedly evidenced in the trust instructions that the health, welfare and well-being of his grandson, a complainant herein, be attended to.

The complainants pray that pending the final hearing upon the bill, the trustees be restrained and enjoined from selling or delivering the Joseph Samuels stock held by the trusts to Stevens or his assignees.

It appears from the evidence that Joseph and Leon Samuels were brothers and were the founders of The Outlet Company; and that Mildred E. Samuels is the widow of Leon Samuels who died September 24, 1929, and the mother of Clare S. Quinn. In addition to the two trusts created by Joseph Samuels there are three other trusts referred to in the bill whose trustees are parties to the contract of sale, performance of which is enjoined; that the bank and Clare S. Quinn are trustees under the will of Leon Samuels and hold 16,100 shares of The Outlet Company stock; that the bank and Farrell, since the decease of Morrissey, are the surviving trustees under an indenture of Clare S. Quinn, dated January 17, 1949, and hold 700 shares of said stock; and that they are also the surviving trustees under an indenture of Clare S. Quinn, dated April 3, 1952, and hold 5,250 shares of said stock. It appears that the five trusts hold a total of 55,230 shares out of a total of 99,420 shares of The Outlet Company stock, which is a controlling interest in the company; that Clare S. Quinn is the beneficiary of the two trusts created by her, while her mother Mildred E. Samuels is the income beneficiary under the Leon Samuels trust and her daughter Clare S. Quinn is the remainderman.

Much testimony was taken and thereafter the trial justice filed a rescript. It is unnecessary for the purposes of this opinion to discuss all of his findings and we shall confine

ourselves to a consideration of those which he made as a basis for the injunction which he later decreed.

The trial justice found that complainants had proved at least prima facie that the bank by its acts had placed its private interests in conflict with its interests as one of the trustees of the Joseph Samuels trusts; that this conflict was not a mere matter of form but involved a very substantial interest, and that the decision of the corporate trustee to sell the shares in the Joseph Samuels trusts was probably affected thereby. The trial justice also found that the immediate effect of a sale of The Outlet Company stock as contemplated would be a detriment to complainant Joseph Samuels Sinclair.

In reference to complainants' charge of negligence in that the trustees failed to negotiate with or to receive offers from third persons in the period from November 10 to December 1, 1958, the trial justice held that the trustees had failed to discharge their duties in that they could probably have obtained a higher offer for the stock in that period than they had already received.

On July 24, 1929 Leon and Joseph Samuels entered into an agreement concerning the 32,500 shares of The Outlet Company stock, which amount each held. Each agreed that during the life of the agreement neither should sell any of the stock without the consent of the other. This agreement was referred to in the indenture of Joseph Samuels executed in 1934 and was confirmed in an agreement of November 30, 1938 signed by Mildred E. Samuels, Clare S. Quinn, and Joseph Samuels individually and as trustee.

The evidence shows that after Clare S. Quinn inherited under her father's will some 16,400 shares of The Outlet Company stock she desired to sell some of this stock to pay her living expenses. A considerable amount of stock was sold and releases from the restrictive agreement were obtained therefor. When several thousand shares had been sold it became evident that if such sales continued control

would be lost, and on April 3, 1952 Clare S. Quinn executed an indenture in which she pledged 5,250 shares of The Outlet Company stock. This stock was pledged to the bank as security for her loan which is now approximately $750,000 and steadily growing. As security the bank holds 5,250 shares of stock pledged to it and a life insurance policy for $750,000 on the life of Clare S. Quinn the cash value of which is approximately $158,358. The bank also has an assignment from Clare S. Quinn of her residuary interest under her father's will in the remaining shares of The Outlet Company stock still held by the trust thereunder.

While complainants concede that $120 per share for The Outlet Company stock is a fair price, they insist that the trustees failed in their duty to negotiate with others and particularly with William H. Sylk concerning whom there was evidence that he was prepared to offer $122.50 a share. The agreement of November 10, 1958 provided that the trustees could receive a bona fide offer in the period between November 10 and December 1, 1958.

For several years the bank had been loaning money to Clare S. Quinn, one of the beneficiaries of three of the five trusts, which in itself produced, in the beginning at least, no conflict of interests. However, when she pledged 5,250 shares of The Outlet Company stock to the bank the latter under certain circumstances could sell this stock to satisfy its loan to some extent. Such a sale would endanger the control of The Outlet Company stock which was most important to the trustees. When the bank became pledgee of the stock it assumed a position with the beneficiaries of the Joseph Samuels trusts in which its interest as a bank was potentially antagonistic to its interest as a trustee. As the loan grew the gap between the interest of the bank as a lender of money and as a trustee of the Joseph Samuels trusts grew wider.

Was the decision of the corporate trustee to sell the stock in its own interest as a bank or was it in the interest of the

beneficiaries of the Samuels trust? We cannot say that the trial justice was clearly wrong in drawing the inference of potential antagonism from the relation of bank and trustee as just outlined; hence he did not err in granting an injunction.

Speaking generally, it cannot be questioned that a trustee is held to a high degree of loyalty to the beneficiaries of his trust. This court stated in *Dodge* v. *Stone,* 76 R. I. 318, at page 323: "Broadly speaking it is clearly established that a trustee must give undivided loyalty to the trust confided to his care and to its beneficiaries. It is the policy of the law to see that in administering the trust he shall not be tempted in any way by conduct or circumstances to act otherwise than with complete loyalty to the trust and its interest. He must at all times exercise a high standard of honor and avoid all situations and transactions that tend to call his good faith into question and to create in himself rights possibly conflicting with those of the beneficiaries."

In *Horton* v. *Maine,* 22 R. I. 126, it appeared that the defendant was the guardian of the plaintiff; that prior to the guardianship the plaintiff mortgaged to the defendant certain goods. After appointment as guardian the defendant foreclosed the mortgage and purchased the property at the sale. Referring to the chance that if such a sale were permitted the mortgagee might conduct it in his own interest, the court said at page 127: "Such a liability the law will not tolerate, and therefore it does not permit the same person to occupy two antagonistic relations from which a possible conflict of duty may arise, and will not stop to consider whether or not a sale in such circumstances in a particular instance is fair or otherwise." See also *Industrial Trust Co.* v. *Dean,* 67 R. I. 504.

In 2 Scott, Trusts (2d ed.), §187.5, the author states at page 1394: "The fact that the trustee has an interest conflicting with that of the beneficiary is a circumstance which the court may properly consider in determining whether

the trustee is acting from an improper motive in the exercise of a discretionary power."

We are of the opinion that complainants have made a prima facie case in that they have shown such a conflict between the interests, particularly of the corporate trustee and those of the beneficiaries, as to make it essential to restrain the sale until there has been opportunity for as full a hearing as the parties desire within the limits of court procedure.

In our opinion the position of the bank with respect to the loan and the action of the trustees with respect to the Sylk offer make this action of the court compelling. Normally the parties would have such a full hearing, but a hearing as outlined would have little value if in the meantime the stock were sold. By such a sale irreparable damage would be done.

In *Miller* v. *Tanenbaum*, 61 R. I. 92, we said at page 95: "The question before us, on the respondent's appeal from the decree granting a preliminary injunction, is merely whether it is reasonably clear that the justice in granting the preliminary injunction exercised his discretion in an illegal manner. The granting of such an injunction does not amount to a formal or final determination of the rights of the parties; its office is merely to hold matters approximately in *statu quo,* until the cause may be properly and finally heard and determined upon its merits; and to prevent, in the meantime, the doing of any act whereby the rights in question may be irreparably injured or endangered. Its issuance rests largely in the sound discretion of the court."

In his rescript the trial justice said: "While the cause was heard at considerable length, no answer was filed and the parties did not agree that the cause could be finally determined as if it were being heard on the merits. It may be that little additional evidence will be produced at the final hearing, yet this Court feels bound by the rules estab-

lished by our Supreme Court with respect to the kind of case which must be made out in order to obtain a preliminary injunction." We are of the opinion that he did not exercise his discretion in an illegal manner. *Studley Land Co.* v. *Myers*, 81 R. I. 426. See also *Blackstone Hall Co.* v. *Rhode Island Hospital Trust Co.*, 39 R. I. 69.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

ROBERTS, J., concurring. Although I agree generally with the result reached by the majority of the court, my view of the issues herein persuades me to state separately my reasons for concurrence.

The preliminary injunction is based upon two entirely different grounds. The first ground is that the respondent trustees were unable to exercise an independent judgment to sell The Outlet Company stock. The second ground is that, assuming the decision to sell the stock to have been properly made, the trustees did not perform their duty to obtain the highest available price therefor. In my opinion the alleged conflict of interests on the part of the trustees has relevance only to their decision to sell the stock. The question whether the trustees performed their duty to obtain the highest price would become material only if the court were to conclude that for the purposes of a preliminary injunction the decision to sell the stock was not in violation of the fiduciary duty.

It is my view that the complainants have shown prima facie that there was on the part of the trustees a sufficient conflict of interests to prevent the fulfillment of their duty of undivided loyalty to the beneficiaries in deciding to sell The Outlet Company stock. Having so concluded, I would not reach the question whether the trustees performed their duty to obtain the highest available price. My purpose herein is to specify what I conceive to be the conflict of interests.

The respondent bank is a trustee of several trusts which hold The Outlet Company stock. It is also a creditor of Clare S. Quinn. Further, the bank as her creditor is a pledgee of 5,250 shares of the stock. Clare S. Quinn has no interest in the Joseph Samuels trusts with which we are concerned in this cause, and for most purposes the property in which she does have an interest is completely separate from the Joseph Samuels trust property. If, as respondents contend, the pledged shares were entirely disconnected from the property in the Joseph Samuels trusts, I would be constrained to conclude that no conflict of interests has been shown. However, because the evidence establishes a practical link between the pledged stock and the stock in the Joseph Samuels trusts, it is my opinion that the bank is incapable of giving undivided loyalty to the complainants in deciding to sell the stock.

The pledged shares constitute a relatively small portion of the outstanding stock of The Outlet Company. However, a combination of all the stock held by respondents in the several trusts represents voting control of the company, and the evidence indicates that by selling such voting control a considerably higher price can be obtained for each share than if small blocks of the stock were sold separately. Consequently the bank as pledgee would be able to obtain a more attractive price for the pledged shares by selling together therewith all the stock in the several trusts. As a practical matter a decision to sell the pledged stock would include a decision to sell all the stock in the five trusts. In my view it is this nexus between the pledged stock and the stock in the Joseph Samuels trusts which gives rise to the conflict of interests.

"It is the duty of a trustee to administer the trust solely in the interest of the beneficiaries. He is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." 2 Scott, Trusts (2d ed.), §170, p. 1193. See 1 Restatement of Trusts

2d, §170, p. 364. In the circumstances of the instant cause the respondent bank's decision to sell The Outlet Company stock inevitably involves a consideration not only of the interests of the complainants as beneficiaries but also of its own security interests as pledgee of the Clare S. Quinn shares. Clearly a sale of the pledged shares could be of benefit to the bank as creditor even though the complainants' interests as beneficiaries might require a retention of The Outlet Company stock. Such a position is inherently antagonistic and prevents adherence to the fiduciary's duty of undivided loyalty.

It is clear that where a trustee possesses a direct non-fiduciary interest in trust property, the duty of undivided loyalty is violated. *Dodge* v. *Stone,* 76 R. I. 318; *Industrial Trust Co.* v. *Dean,* 67 R. I. 504; *Horton* v. *Maine,* 22 R. I. 126. See also Scott, The Fiduciary Principle, 37 Calif. L. Rev. 539. In the circumstances of this cause it seems to me that the trustees' position as pledgee of the Clare S. Quinn stock is in essence the same as though the bank were a pledgee of stock in the Joseph Samuels trusts. The conflict of interests therefore is not, as respondents urge, an indirect conflict only. Compare *Anderson* v. *Bean,* 272 Mass. 432, *Donnelly* v. *Consolidated Inv. Trust,* 99 F.2d 185, and *Fidelity Union Trust Co.* v. *Guaranty Trust Co.,* 135 N.J. Eq. 222. Because of the considerations involved in the decision to sell the stock, there is a direct competition between the commercial interests of the bank as pledgee and its fiduciary duty to the complainants.

For the reasons stated, I concur in sustaining the decree appealed from.

CONDON, C. J., dissenting. From my examination of the transcript I am of the opinion that the trial justice was clearly wrong in finding "that the trustees did not perform their duties during the twenty day period after the execution of the contract with Stevens, resulting in a probable failure to obtain a higher price for the Outlet stock." No

useful purpose would be served by a lengthy discussion here of the significant portions of the evidence upon which I base my opinion. Suffice it to say that I have carefully perused the entire transcript and have found the evidence overwhelming to the effect that the trustees performed their duties with skill and prudence and with utmost good faith. That the special interest and desires of complainant Joseph Samuels Sinclair will not be served by the proposed sale in no way detracts from the essential correctness of the conduct of the trustees in exercising the ample and virtually uncontrolled powers vested in them by the trust instruments.

It is clear from the record that Sinclair is claiming an interest which the trustees were not bound to serve. And while the sale of The Outlet Company stock at the higher price which he negotiated may possibly be more advantageous to him it is not clear that it would be equally advantageous to the trusts which the trustees are in duty bound to safeguard before catering to the special desires of any particular beneficiary. Therefore I would hold that the trial justice erred in basing his decision upon the abovementioned finding.

In compliance with that view, strict adherence to longestablished principles of equity pleading in this state would normally result in the denial and dismssal of the bill of complaint, since the only grounds for relief alleged therein were those comprehended within that particular finding. However, the trial justice based his decision on a further ground dehors the bill. He states such ground in his rescript as follows: "* * * that the bank has brought about such a conflict of interests, between itself individually and as trustee, of so substantial a nature as to prevent the exercise of its independent judgment as a trustee of the Sinclair trusts in determining upon a sale, and that the complainant Sinclair and his children as contingent beneficiaries will suffer some detriment * * *." There are in

the decree no specific findings of facts upon which that conclusion is predicated. And there are no allegations of facts in the bill which would serve to point up supposed breaches of loyalty on the part of all the trustees or of the bank alone. Indeed complainants' brief is likewise not free from obscurity in this matter. Nor is the majority of this court in harmony as to whence arises this conflict of interests and divided loyalty.

Ordinarily the absence from the bill of complaint of any allegations of such conflict and divided loyalty would preclude the introduction of evidence along that line. Evidence on matters not alleged in the bill is useless. And a decree in equity must rest ultimately on allegations therein. *Dolan* v. *Dolan,* 78 R. I. 12; *Flynn* v. *Byrne,* 82 R. I. 48; *Dimond* v. *Barlow,* 82 R. I. 399.

This is not a mere technical requirement but goes to the very heart of the matter of fair equity pleading. "We should contradict, in the most flagrant manner," said Ames, C. J., "the just principle of equity practice which requires, for the purposes both of answer and proof, a fair conformity between the 'allegata' and the 'probata,' upon a bill for relief, if we should allow the complainants, because their proof fails them upon the ground alleged, to obtain relief upon any other ground, and especially upon any ground inconsistent with that." *Atlantic Fire & Marine Inc. Co.* v. *Wilson, Gall & Co.,* 5 R. I. 479, 488. It is generally held that material facts must be alleged to put them in issue, or relief cannot be granted even though the facts be proved. *Harding* v. *Handy,* 24 U. S. *103. And the examination of the case by the court is confined to the issues made by the pleadings. *Rubber Co.* v. *Goodyear,* 76 U. S. 788.

In the case at bar complainants did not allege in their bill any facts which if proved would raise the question of divided loyalty of the trustees in entering into the contract with Stevens for the sale of The Outlet Company stock. Nor did they, in presenting their case in chief, intro-

duce any evidence tending to prove such issue. Apparently the idea of invoking the undivided loyalty rule did not occur to them until the trial justice suggested it by his interrogation of one of respondents' witnesses. Thereafter in rebuttal complainants seized the opportunity to develop the idea by further inquiry but they did not move to amend their bill.

In this state of the pleadings evidence on the issue of divided loyalty was inadmissible and should have been disregarded at least until the complainants amended their bill by alleging certain facts which if proved would clearly show in what respect the trustees had involved themselves in a conflict of interests. As it is we are left in doubt concerning the precise nature of such conflict and the time when it arose. Even the above-quoted finding of the trial justice does not make those points clear.

However, the majority here apparently assume that it arose, as they state in the court's opinion: "When the bank became pledgee of the stock it assumed a position with the beneficiaries of the Joseph Samuels trusts in which its interest as a bank was potentially antagonistic to its interest as a trustee." In my opinion this is an untenable assumption. At the time Clare S. Quinn pledged her stock as partial security for her loan from the bank such stock was her absolute property which she could sell, pledge or otherwise dispose of as she pleased. It was not then part of the Leon Samuels trust and was not subject to any of the restrictions contained in the agreements of Joseph Samuels with Leon Samuels and later with Leon's widow and Clare S. Quinn. By virtue of the consents previously obtained by Clare S. Quinn from the trustees, which consents they had the undoubted authority to give under the ample powers granted to them by the trust instruments, her stock became free of such restrictions. Of course it is urged in the briefs and argument of complainants that the giving of such consents by the trustees was in itself a breach of the

undivided loyalty rule in that such consents favored Clare S. Quinn, one of the beneficiaries of the Leon Samuels trust, over the beneficiaries of the Joseph Samuels trusts. I think there is no merit in that contention.

If there was a conflict of interests because the bank was a trustee under both trusts it was one created by the settlors themselves. It is generally held that in such a situation the undivided loyalty rule does not apply. "By the terms of the trust, the trustee may be permitted to do what, in the absence of such provision in the trust instrument, would be a violation of his duty of loyalty; and within limitations, the trustee may be authorized by the trust instrument to act in matters involving a divided interest." 90 C.J.S. Trusts §248(e), p. 269. Idem at page 270: "Also, where the trustee's dual relationship with respect to trust property was created not by the trustee, but by the act of the settlor in appointing such person as trustee with knowledge of his other interest in the property, transactions engaged in by the trustee, acting with prudence and diligence, are not invalid." For illustrations of this principle see *In re Farrell's Will,* 91 N.Y.S.2d 89; *Matter of Balfe,* 245 App. Div. (N.Y.) 22; *Rosencrans* v. *Fry,* 12 N. J. 88; *Flagg Estate,* 365 Pa. 82; *Steele Estate,* 377 Pa. 250. Some of the facts in the last two cases bear a marked similarity to those in the case at bar.

In a situation such as exists here, while the court may not apply the undivided loyalty rule it should scrutinize the transaction complained of with extreme care in order to satisfy itself that the trustees in exercising the plenary power conferred upon them have acted in the utmost good faith toward all the beneficiaries. From my examination of the evidence I am fully satisfied that the trustees have not violated that standard. On the contrary I am convinced that in so far as its taking a pledge of the 5,250 shares as security for the loan to Clare S. Quinn is concerned the bank performed an important service for the

benefit of all the beneficiaries. The uncontradicted testimony is to the effect that the primary purpose of obtaining such pledge was to assure the continued control of The Outlet Company in the Joseph and Leon Samuels trusts thereby enabling the trustees to be in a commanding position to obtain the most advantageous terms in the event it was deemed advisable to sell the stock as a block in accordance with the provisions of the trust instruments.

I have been constrained to express at this length my reasons for dissenting from the majority because I am profoundly concerned, not to say disturbed, over the possibility that their opinion upholding the trial justice in his application of the undivided loyalty rule to the facts of this case will create confusion and doubt as to the proper administration by a trustee of multiple trusts. Under the view of the law that I have undertaken to expound here we would avoid that possibility and at the same time do justice and equity to all concerned in this litigation.

For the reasons above given I would reverse the decree appealed from and dissolve the injunction as improvidently issued.

*Bruce G. Sundlun, John H. Chafee, Philip W. Amram,* of Washington, D. C., *Amram, Hahn & Sundlun,* Washington, D. C., for complainant Joseph Samuels Sinclair.

*John H. Chafee,* for complainant Bertha Samuels Sinclair.

*Ernest A. Jenckes,* guardian ad litem.

*Hinckley, Allen, Salisbury & Parsons,* for respondents Industrial National Bank of Providence and Walter F. Farrell, Trustees.

*Higgins, Cavanagh & Williamson, Joseph V. Cavanagh,* amicus curiae.